Merrimack, }
Nov. 2, 1937. }

MABEL ABBOTT, *Adm'x*

*v.*

PRUDENTIAL INSURANCE COMPANY OF AMERICA.

*Willoughby A. Colby* and *Raymond K. Perkins* (*Mr. Colby* orally), for the plaintiff.

*Thorp & Branch* (*Mr. Branch* orally), for the defendant.

WOODBURY, J.   Each policy contains a clause to the effect that the insurer, "upon due proof that the Insured—has sustained bodily injury, solely through external violent and accidental means—resulting in the death of the Insured within ninety days from the date of such bodily injury—will pay in addition to any other sums due under this policy—an Accidental Death Benefit equal to the face amount of insurance stated in this Policy."

As submitted to the jury the plaintiff's evidence indicated that the insured, on May 30, 1934, was involved in an automobile accident in which he received injuries to his head, chest and back.   Prior to that time his health had been excellent, but thereafter he seemed weak and listless and complained of headaches as well as bodily stiffness and soreness.   Nevertheless he continued without interruption at his work in a laundry and did not take medical advice.

On June 7, 1934, he was taken to a hospital and on the day following he died.   The plaintiff introduced no medical testimony and, without the death certificate referred to above, there is no evidence of either the nature of the insured's illness or of the cause of his death.

Upon the evidence submitted to the jury the plaintiff's case was fatally defective.   Although she was "not bound to disprove the existence of all other possible causes" of the insured's death, she was subjected to the burden "of making it a little more probable than otherwise" that his death resulted from the injuries which he received in the automobile accident.   *Bresnahan* v. *Company*, 88 N. H. 273, cited in *Harmon* v. *Richardson*, 88 N. H. 312, 314, and cases cited.

This burden she has failed to sustain. The extent of the injuries inflicted upon the decedent on May 30, 1934, whether slight or serious, whether likely to cause death or not, is nowhere made to appear. Neither has she shown, as pointed out above, the cause of the insured's death. It is entirely a matter of conjecture whether his death resulted from external injuries or whether it "resulted from any one of several well-recognized and not infrequent natural causes." *Dame* v. *Car Works*, 71 N. H. 407, 408. In this state of the evidence it is wholly a matter of guess or conjecture whether the decedent's injuries resulted in his death and, under legal principles too familiar to require the citation of authorities, the defendant's motion for a nonsuit should have been granted.

The instant case differs from *Emery* v. *Company*, *post* 165 decided this day, in that here no cause sufficient to produce death was shown to have been in operation at the time when the decedent was stricken.

The situation would be radically different, however, if the decedent's death certificate had been admitted in evidence. That certificate, in addition to other matters, states: "Cause of Death, Cerebral Hemorrhage; Duration, 2 days; Contributing cause, Injury; Duration, 11 days ago." The fact that "Injury" is given as only a contributing cause does not render the certificate immaterial. The policies do not make it a condition precedent to the recovery of double indemnity that death must follow immediately upon bodily injury. They provide for such indemnity when the insured "has sustained bodily injury, (of the specified kind) resulting in death," and to result means "to proceed, spring or arise as a consequence, effect or conclusion; to come out, or have an issue; to terminate; to end." Webster, New International Dictionary. The certificate indicates that the injuries received in the automobile accident had a definite place in the chain of causation leading up to death and that they were the cause of the cerebral hemorrhage from which the decedent later died. They, therefore, resulted in his death and, there being no question but that the injuries were sustained "solely through external, violent and accidental means," the plaintiff would have made out a *prima facie* case if the certificate had been considered in connection with her other evidence.

The question of the admissibility of the death certificate for the purpose for which it was offered is primarily one of statutory construction. By statute, P. L., *c.* 143, *s.* 20, the physician attending at the death of any person is required to report to the undertaker

or town clerk "the facts required in the record of a death, according to chapter 285, section 1." This latter section of the Public Laws includes, with other facts required to be reported, "the disease or cause of death." These reports the town clerk is required to record, and copies thereof he is required to transmit monthly to the registrar of vital statistics. P. L., *c.* 285, *s.* 6. These copies the registrar is required to preserve, (*Id. s.* 9.), and "Every certificate or other official paper executed by the registrar under seal, in pursuance of authority conferred by law, shall be received as evidence, and . . . copies of papers and records in his office, so authenticated, shall be received as evidence with the same effect as the originals." *Id. s.* 3.

The last part of this section evidently has reference to the copies of town clerks' records on file in the registrar's office, and section ten of the above chapter of the Public Laws provides: "The town clerks' record of a birth, marriage or death, or a duly certified copy thereof, shall be *prima facie* evidence of the fact, in any judicial proceeding." The decisive question, then, is whether section 10 limits town clerks' records of death to *prima facie* evidence of the fact of death alone, or whether those records are also *prima facie* evidence of other facts contained therein.

The common law of this state, as an exception to the hearsay rule, admits official records made by public officers in the course of their public duties as *prima facie* evidence of all facts required by law to be reported. Under this rule town records are admissible (*Bishop* v. *Cone*, 3 N. H. 513; *Little* v. *Downing*, 37 N. H. 355), town officers' books (*Thornton* v. *Campton*, 18 N. H. 20; *Rindge* v. *Walker*, 61 N. H. 58), a town clerk's record of a marriage (*State* v. *Wallace*, 9 N. H. 515), the records of a company of militia (*Shattuck* v. *Gilson*, 19 N. H. 296), a sheriff's return of service (*Angier* v. *Ash*, 26 N. H. 99), inventories of estates on file in the probate court (*Seavey* v. *Seavey*, 37 N. H. 125), and reports of the county commissioners relative to the lay out of a highway. *Hayward* v. *Bath*, 38 N. H. 179.

No case in this state has been cited to us, nor has any come to our attention, in which the foregoing principle was applied to an official record of death. Courts elsewhere, however, have applied the foregoing common-law principle to such records, and have submitted them as *prima facie* evidence of the cause of death. *McKinstry* v. *Collins*, 74 Vt. 147; *Broadbent's Case*, 240 Mass. 449; *Branford Trust Co.* v. *Insurance Co.*, 102 Conn. 481; *Bozicevich* v. *Company*, 58 Utah 458.

The defendant contends that this line of, authority is inapplica-

ble because section ten of our statute, quoted above, limits the common-law rule. Its position is that the legislature in using the word "fact" in the singular instead of the plural number intended to authorize the use of official death records as *prima facie* evidence of only the fact of death and, by inference, intended that they should be used for no other purpose. So construed, as pointed out above, the statute would be in derogation of the common law. Furthermore, if logically applied, this construction of the statute would result in death records being inadmissible to show even the date and place of death. This is so stringent a limitation that the records would be of no practical value in the great majority of litigated cases. In the absence of express and clear words we are not disposed to believe that the legislature intended so extreme a restriction upon the use of such records.

If the words of the statute are broad enough to permit the use of the record to show, *prima facie*, the date and place of death, as we believe that they are and as counsel for the defendant in oral argument conceded that they were, we see no place of halt short of the common-law rule. Logic affords no clue to the classification as admissible or otherwise of the facts in addition to that of death itself which the statute requires to be reported and recorded.

Unequivocal words of restriction could readily have been used had the legislature so desired (see section 1903, General Laws of Vermont), and the failure to use such words, coupled with the reasons pointed out above, leads us to believe that section 10 of chapter 285 of the Public Laws was intended to be only declaratory of the common law. It is not to be understood, however, that the effect of the evidence to produce a *prima facie* case may not be overcome by evidence demonstrating its lack of reasonable credibility. *State v. Lapointe*, 81 N. H. 227. This is a question not here presented.

*New trial.*

BRANCH, J., did not sit: the others concurred.