Hillsborough,
No. 5816.

Susan Hadler, *Adm'x*

*v.*

Great Eastern Life Insurance Co.

Argued February 4, 1969.
Decided June 30, 1969.

*James M. Winston* (by brief and orally), for the plaintiff.

*Hamblett, Kerrigan & Hamblett* (*Mr. Joseph M. Kerrigan* orally), for the defendant.

GRIMES, J. The first of three actions is brought by Susan Hadler to recover as beneficiary of a life insurance policy alleged to have been issued on the life of her husband, Leo H. Hadler, by the defendant. The other two actions are brought by Susan Hadler as administratrix of her husband's estate, one seeking recovery on the basis of a breach of agreement to issue a policy in the amount of $10,000 on the life of the deceased and the other for damages due to the alleged negligent failure of the defendant to issue such a policy.

At the close of the plaintiff's evidence, motions for nonsuit in all three actions were denied, but after the defendant rested without introducing evidence, its motions for dismissal were granted in all three actions. The plaintiff's exceptions were transferred by *Morris*, J.

Since the action of the Court was taken after the close of the evidence, the issue involved the sufficiency of the evidence to support the claims of the plaintiff rather than the sufficiency of the pleadings as contended by the plaintiff. The use of the term "dismissal" instead of "directed verdict" in the motions does not change the issues involved.

In considering whether the directed verdicts should have been granted, we must, of course, consider the evidence most favorably to the plaintiff and permit all reasonable inference from it. *Zellers* v. *Chase*, 105 N. H. 266.

Following this rule, we consider the evidence as follows:

On February 24, 1964, Leo H. Hadler, who was then in poor health and who had been refused insurance by at least one company, made a preliminary application through the Lloyd Wood Agency to the defendant for a $10,000 ordinary life policy. The defendant specialized in substandard risks. Wood was general agent for the defendant. Correspondence followed between Wood and the defendant, including the requesting and supplying of medical information. On May 4, 1964, defendant referred the matter to the Cologne Reinsurance Company, stating that it did not wish to retain any of the risk. Defendant notified Wood of its action. On May 11, 1964, Cologne responded, saying Hadler was "probably table fourteen subject to current medical, premiums paid-up at 65 . . . ." On May 21, 1964, defendant notified

the Wood Agency that on receiving a regular application, current medical examination, three (3) blood pressure readings and a retail credit report, the premiums would be "Table 14 450% on Life Paid-up to 65 plan." On May 26, 1964, Hadler made regular application and underwent a medical examination by a doctor of defendant's choice. The doctor's report showed Hadler as not being in sound health, a poor risk for insurance, and that Hadler's own doctor had informed him Hadler was "in impending terminal uremia." On June 3, 1964, defendant sent Cologne all the information it had requested except the three blood pressure readings. The doctor's report, however, included a reading. By telegram dated June 11, 1964, received by defendant June 12, Cologne accepted Hadler's application and quoted "Table fourteen Paid-up to 65."

Table fourteen permitted a determination of the premium, and on May 26 Wood had accepted Hadler's check for $275.90 representing 20% of the first year premium, which was forwarded to the defendant on May 27 and cashed shortly thereafter.

After June 3, Wood discussed the case several times with defendant's chief underwriter and was advised that a policy was being issued and that the total premium would be in the neighborhood of $1,300. Defendant's underwriting department approved the Hadler application on June 16, 1964 and the application was sent to the "policy issue section" on the 16th or 17th. This department was located in the same large room as the underwriting department. Hadler died on June 21, 1964, before any policy had in fact been issued.

There was evidence that following Hadler's death, the defendant notified Cologne and had questions as to liability. It also investigated the cause of death and supplied forms for application for payment which were completed and returned on July 7, 1964. On that date, however, defendant denied liability and returned the $275.90 which had been paid.

The application signed by Hadler contained the following language above his signature: "I hereby agree . . . that except as otherwise provided in the attached receipt bearing the same number as this application, the insurance herein applied for shall not take effect until a policy therefor is delivered to me and the first premium paid while the Proposed Insured . . . is in good health." In view of the circumstances, the good health provision could not have been intended to apply. However, there is nothing

in the evidence to indicate a waiver of the other provisions, and since no policy had been issued, let alone delivered, there could be no action on a policy. The requirement of delivery of a policy also precludes recovery on the basis of an oral contract of insurance even if the doctrine of *Gerrish* v. *Insurance Co.*, 55 N. H. 355, and *Elliott* v. *Insurance Company*, 92 N. H. 505, were to be extended to life insurance, a point upon which we make no decision. The Court's action in taking from the jury the first two actions was therefore proper.

The third action seeks damages in tort based upon alleged negligence on the part of the defendant to issue a policy before Hadler's death. Authorities are divided as to whether liability may be based on negligent failure to act on an application within a reasonable time. See cases collected in Annot. 32 A.L.R. 2d 487, 511. The rationale of the cases denying liability is that the insurer, like any other offeree, is under no legal duty to act on an application and therefore tort liability is precluded. Those upholding liability base their position on various reasons, such as the public interest nature of insurance companies operating under franchises, the unequal bargaining positions of the parties, the nature of the risk furnishing sufficient danger from delay to impose a duty to act diligently, implied contract, and when the premium has been paid on the basis of trust and something akin to unjust enrichment by retaining the premium without risk for an unreasonable time.

The situation presented in this case, however, goes beyond a claim based upon delay in accepting the application. The application had in fact been accepted. Also, the defendant occupied a different relationship to the deceased than is usually the case when an application for life insurance is made.

Defendant from May 4 on was seeking 100% reinsurance from Cologne. If accepted by Cologne, defendant would write the policy but the risk would be assumed by Cologne. Cologne accepted the risk by telegram received by defendant on June 12, 1964. Hadler had paid all he had been asked to pay on the premium, and there is nothing to indicate that he was not ready to pay the balance. Defendant knew Hadler was in poor health and that the risk of death was great. In these circumstances, the reasons given by courts for non-liability for delay in accepting applications do not apply.

Defendant was not a mere offeree. Most of the reasons given

for imposing liability for negligent delay in accepting an application, however, apply with even greater force to the situation in this case. Under the circumstances, we hold that defendant had the duty to issue and deliver the policy within a reasonable time after acceptance of the risk by Cologne. The evidence presented a jury question and the Trial Court erred in directing a verdict for the defendant on this action.

*Judgment for the defendant on the first two counts; remanded as to the third count based on negligence.*

LAMPRON and GRIFFITH, JJ., did not sit; the others concurred.