Carroll
No. 6787

GRACE M. BICKFORD, ADMINISTRATRIX OF THE ESTATE
OF JACKSON S. BICKFORD

v.

METROPOLITAN LIFE INSURANCE CO.
AND ROGER W. GREGORY

March 29, 1974

*James J. Kalled,* by brief and orally, for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden* and *Martin L. Gross* (*Mr. Gross* orally) for the defendants.

KENISON, C.J. The major issue of this case is whether the trial court correctly ruled that the two-year suicide clause in a life insurance policy began to run on the date the policy was issued. The plaintiff, as administratrix of her deceased husband's estate as well as named beneficiary in his life insurance policy, filed an action in both tort and contract to recover proceeds and damages arising

out of a coverage dispute under the life insurance policy issued by the defendants to the plaintiff's husband. A trial without jury resulted in verdicts in favor of the defendants. All questions of law raised by the plaintiff's exceptions to certain findings, rulings and the verdicts were reserved and transferred by *Batchelder, J.*

On March 14, 1967, the defendant insurance company's agent, Roger W. Gregory, received an application from Jackson S. Bickford for a twenty-year mortgage term life insurance policy naming his wife, the plaintiff, as the beneficiary. The application contained the following condition: "Except as may be provided in a receipt given on and bearing the same date as ... this application, the company will incur no liability by reason of this application until a policy has been delivered and the full first premium specified therein has actually been paid to and accepted by the company. Upon such delivery and payment, the policy will be effective as of its date of issue ...." At the same time, a receipt of the type referred to in the application was delivered by the agent to Mr. Bickford in exchange for the payment of a $6.47 premium. The receipt contained a temporary insurance agreement which provided coverage for a sixty-day period from the date of receipt and specifically stated that "if death results from suicide, no payment will be made except for the return of the Amount Received."

The defendant company determined that a physical examination of Mr. Bickford was necessary and on March 31, 1967, such examination was conducted by his personal physician. A report of the medical examination was received by the defendant company on April 5, 1967. On April 11, 1967, the defendant company requested from Mr. Bickford's physician additional medical information. After a delay of approximately six weeks and two reminders by the insurance company, the physician provided the requested information on May 24, 1967. The defendant company again determined more information was needed, and requested the physician, on June 2, 1967, to obtain a urine specimen in order to ascertain the condition of Mr. Bickford's sole remaining kidney, the other having been remov-

ed by operation. On June 21, 1967, the specimen was received by the defendant company. On the basis of these reports, the defendant company decided to offer a sub-standard risk policy instead of the standard policy Mr. Bickford applied for because his medical background indicated a higher mortality expectancy. The revised policy was accepted by Mr. Bickford and bore an issue date of July 1, 1967. Its coverage was limited by a suicide clause which read: "If, within two years from the date of issue, the insured dies as a result of suicide, while sane or insane, liability of the company will be limited to an amount equal to the premiums paid, without interest."

On June 9, 1969, a divorce decree was entered between Mr. Bickford and the plaintiff. At approximately the same time, he received disheartening news that one of his legs, which had been previously injured in an accident, would eventually have to be amputated. He was also suffering from a bleeding ulcer on one of his feet and from kidney disorders. His employer testified that these developments severely depressed Mr. Bickford and that he attempted to commit suicide by taking an overdose of pills. On June 25, 1969, Mr. Bickford's body was found in a wooded area near Wolfeboro. The body was lying on its side facing the driver's side of the car with the head toward the rear and in close proximity to the exhaust pipe. A length of garden hose ran from the partially opened window on the driver's side to the area of the exhaust pipe. The ignition switch was in the "on" position, the gas tank was empty and the battery flat. The police chief investigating the scene testified that Mr. Bickford's skin was "livid" or "suffused" in color, and the medical examiner concluded that death had occurred from carbon monoxide poisoning. He certified the death had taken place on June 22, 1969, by means of suicide.

As a preliminary matter, the plaintiff contends that the trial court erred in finding that Mr. Bickford died by way of suicide. In particular, she asserts that the admission of the medical examiner's report was improper and claims that the remaining evidence is insufficient to support such a finding. We cannot agree with the plaintiff's argument.

The medical examiner is required by RSA 611:16 to file a certificate with the town clerk indicating the cause of death. RSA 611:4. *See also* RSA 611:19. RSA 126:18 establishes such required facts as prima facie evidence in any judicial proceeding, and has been construed as incorporating the common law which admits, as an exception to the hearsay rule, official records made by public officers in the course of their public duties. *Abbott v. Insurance Co.,* 89 N.H. 149, 152-53, 195 A. 413, 415 (1937); Annot., 21 A.L.R.3d 418, § 8a (1968); *see* 19 Massachusetts Practice (Evidence) § 613, at 836-37 (K. Hughes 1961); *cf.* Annot., 28 A.L.R.2d 352, §§ 3, 7 (1953, Supps. 1970, 1973). While it is clear that the prima facie effect of this evidence may be overcome by evidence demonstrating its lack of reasonable credibility (*Abbott v. Insurance Co.,* 89 N.H. 149, 153, 195 A. 413, 415 (1937)), the evidence showing Mr. Bickford's depressed state of mind, the physical facts of the manner by which his death occurred, the "livid or suffused" coloration of his skin and the cause of death as carbon monoxide poisoning eliminates any suspicion of foul play and thus we hold that the trial court's ruling was correct. *Eichel v. Payeur,* 107 N.H. 194, 196, 219 A.2d 287, 288 (1966); *Rivier College v. St. Paul Fire & Marine Ins. Co.,* 104 N.H. 398, 403-04, 187 A.2d 799, 804 (1963); Annot., 85 A.L.R.2d 722, § 2 (1962, Supps. 1968, 1973).

The plaintiff's principal argument is that the trial court erred in finding that the suicide clause in the insurance policy began to run on the date the policy was issued. She contends that since the terms of the temporary insurance agreement and the insurance policy were virtually identical, the effective period of the suicide clause should commence on March 14, 1967 rather than July 1, 1967. In the alternative, the plaintiff asserts that the company was negligent in processing the application and caused delays which prevented the policy from being issued at an earlier date. She urges that equitable principles be applied to prevent the defendant company from unfairly taking advantage of its negligence.

We reject the plaintiff's contentions for two reasons. First, the temporary insurance agreement provided a maxi-

mum effective period of sixty days and thus its coverage expired on or about May 14, 1967. Mr. Bickford was without insurance from that date until July 1, 1967, when the defendant company issued the policy. Since the policy expressly imposed the two-year suicide clause from the date of issue, we believe the beneficiary should be denied coverage because Mr. Bickford's death occurred within this period. The temporary agreement and the insurance policy were separate contracts, and the plaintiff's attempt to portray them as one instrument is defeated by their express terms. *Hadler v. Great Eastern Life Ins. Co.,* 109 N.H. 453, 455-56, 256 A.2d 650, 652 (1969); *cf.* Annot., 37 A.L.R.3d 933, § 7 (1971). Second, the record reveals that the great bulk of the delay in processing the application was caused by Mr. Bickford's physician. While it is true that if the insurer had expedited the application by ten days the plaintiff would be entitled to benefits, we cannot say that the trial court erred in concluding that the insurer was not negligent. The record demonstrates that the defendant company acted promptly on the application once it received the proper information. *See Abington Fire Ins. Co. v. Drew,* 109 N.H. 464, 466-67, 254 A.2d 829, 831 (1969).

*Plaintiff's exceptions overruled.*

All concurred.