Hillsborough
No. 7279

PATRICIA COUTURE, ADMINISTRATRIX
OF ESTATE OF RONALD DUMONT

v.

MAMMOTH GROCERIES INC. & a.

March 31, 1976

*James A. Connor,* by brief and orally, for the plaintiff.

*Devine, Millimet, Stahl & Branch (Mr. Shane Devine* orally) for the defendants.

LAMPRON, J.  Appeal under RSA 281:37 (Supp. 1975) from a decision of the deputy labor commissioner that a fatal heart attack suffered by the decedent on June 19, 1973, on the premises of the defendant, his employer, did not arise out of and in the course of his employment and therefore was not compensable. Trial de novo before the Superior Court (*Flynn,* J.) resulted in certain findings and a ruling that his death was compensable under RSA 281:2 V (Supp. 1975). Defendant's exceptions, including that to the denial of its motion to set aside the verdict, were reserved and transferred. The issue presented on this appeal is whether the evidence warranted the trial court's decision that plaintiff's death was compensable.

The trial court made the following findings. "On June 19, 1973, the decedent, Ronald Dumont, was employed by the defendant, Mammoth Groceries, Inc., in a supervisory capacity as manager of its meat department. While so employed, the decedent was found dead sitting on the toilet in the men's room in the stock room of the defendant's premises. The medical referee attributes death to a myocardial infarction. Prior to this seizure, the decedent had no previous complaints of chest pains or heart condition and did not suffer from high blood pressure.

"At about 9:00 a.m., the decedent was seen going to the men's room by other employees. Prior to this he had been engaged in some transporting of heavy quarters of beef from the third floor to the second floor. When the decedent did not return from the rest room, Robert Lindsey, a fellow employee, went to investigate around 9:20 a.m., and found him dead seated on the toilet seat

with his head and right shoulder reclining against the side wall. The Medical Referee, who saw the decedent around 11:30 a.m., was of the opinion that this heart attack was probably due to the lifting of the heavy beef quarters.

"Upon all the evidence, it is found and ruled that Ronald Dumont suffered an accidental injury arising out of, and in the course of, his employment within the meaning of the Workmen's Compensation Act. The plaintiff's appeal is sustained . . . ."

There is no dispute between the parties that the decedent died as a result of a myocardial infarction; that he had no previous complaints of chest pains or heart condition; and that he did not suffer from high blood pressure. The sole contested issue is whether the trial court could properly find on the evidence presented that medically his employment contributed to cause his heart attack. In cases like this where there is no prior weakness or disease, "any exertion connected with the employment and causally connected with the collapse as a matter of medical fact is adequate to satisfy the legal test of causation." A. Larson, Workmen's Compensation § 38.80 (Desk ed. 1974); *Jackson v. Emile J. Legere, Inc.,* 110 N.H. 252, 254, 265 A.2d 18, 20 (1970). We are aware of the concurring opinion in that case which states that because of the varied factors involved it is very difficult for medical science to give positive answers in the domain of work connection with heart deaths. However, the most important point for our purposes is whether medical science can furnish answers which are more probably correct than not.

The pivotal witness in this area of the case was Dr. Lucien P. Guay, the medical referee, who examined the body of Ronald Dumont at the scene. On direct examination, in describing what he observed, the doctor stated: "He was a meat cutter at the Mammoth Mills. He had been transporting quarters of beef from the top floor to this [second] floor." He was then asked the following hypothetical question: "Q. Would the lifting of heavy pieces of meat, together with frequent arguments with your employer, and a certain amount of pressure by your employer on you, provide a setting for the onset of a heart attack?" "A. I think it would, Yes." Then the following colloquy took place between the doctor and the court. "The Court: What do you say is the cause of the heart attack? Dr. Guay: Probably the lifting of those heavy beef quarters." No objection to the opinion given or motion to strike it appears on the record.

There was evidence from other witnesses that as a part of their work employees in the meat room lifted sides of beef weighing 75 to 80 pounds from overhead hooks as well as lifting crates of chickens weighing 40 to 50 pounds. Each morning trays of packaged meats weighing about 25 pounds were brought and placed in a display case on the second floor. Decedent's daughter who worked in the meat department testified that she saw her father perform these tasks at different times. The deceased worked under a bonus agreement which depended on the amount of meat sold. A dispute arose between her father and the employer as to whether credit was given for all meat sales at the checkout and "he [deceased] was a nervous wreck."

On cross-examination Dr. Guay acknowledged that his notes, dated June 19, 1973, the date of Dumont's death, and which were admitted in evidence, did not mention the fact that the deceased had been lifting heavy beef quarters that morning. The following colloquy took place between defendant's counsel and the doctor. "Q. Who in a position of authority at Mammoth Mills did you talk to who saw him [deceased] actually working and lifting things that day? A. I don't know who they are. Q. You did talk to some other employees? A. Yes. Q. The reason I asked you, we haven't heard from any employee from Mammoth Mills that support him [deceased] lifting heavy things that morning. A. That is what I was told."

There can be no doubt that evidence of the type of work the deceased performed that morning was relevant on the issue of whether his death was causally related to his employment. *Jackson v. Emile J. Legere, Inc.,* 110 N.H. 252, 254, 265 A.2d 18, 20 (1970). If the doctor had made this same information, which he said he received from employees, part of his official records as medical referee (RSA 611:8, :9, :15, :16 (Supp. 1975)) it would most likely have been admitted in evidence. *Bickford v. Metropolitan Life Ins. Co.,* 114 N.H. 237, 240, 317 A.2d 573, 575 (1974). It became evidence in this case without objection. Even though it is hearsay, it must "be considered and given its logical probative effect." *Barlow v. Verrill,* 88 N.H. 25, 28, 183 A. 857, 859 (1936). It can provide the factual support for a hypothetical question pertaining to the causal connection between decedent's death and his employment and sustain a finding made on that issue. *St. Germaine v. Company,* 94 N.H. 291, 51 A.2d 477 (1947); *Maul v. Iowa-Nebraska Light & Power Co.,* 137 Neb. 128, 288 N.W. 532

(1939); *see* A. Larson, Workmen's Compensation § 79.20 (Desk ed. 1974).

We hold that on the evidence before it, the trial court could find and rule, as it did, "that Ronald Dumont suffered an accidental injury arising out of, and in the course of, his employment within the meaning of the Workmen's Compensation Act . . . [and] that compensation benefits be paid to the Estate of Ronald Dumont."

*Defendant's exceptions overruled.*

KENISON, C.J., and GRIFFITH, J., concurred in the result; the others concurred.