(No. 5341.   March 6, 1930.)

C. T. HAMPTON and EMMA HAMPTON, Appellants, v. N. H. LEE and B. F. BUFFINGTON, Respondents.

[285 Pac. 1023.]

Turner K. Hackman, for Appellants.

Bothwell & Chapman, for Respondents.

BUDGE, J.—Plaintiffs, husband and wife, were the owners of an 80-acre tract of land which they leased to defendant Lee. It will be more convenient hereinafter to refer to the plaintiffs in the singular, or as lessor. Before the expiration of the term of the lease the lessee undertook to sell and have delivered to defendant Buffington a greater portion of the manure accumulated on the premises from the livestock owned by the lessee. This action was instituted by plaintiff to have adjudicated whether the lessor or lessee was entitled to have and dispose of the manure.

The complaint alleged the accumulation of the manure from straw and excrement produced from feed grown upon the leased land, that the same was of inestimable value when spread over the land in preserving its fertility, and that defendants were preventing plaintiff from so doing and depriving plaintiff of his property therein. As a part of defendant Lee's answer and affirmative defense the lease was referred to and annexed thereto, and it was alleged that defendant had conducted a dairy business and kept on the premises upwards of 75 head of cattle, and that a greater portion of the manure had accumulated from feed produced on lands other than those leased from plaintiff, not to exceed 75 loads of manure having accumulated from feed produced on the leased property. Defendant Lee claimed to be the owner of and entitled to the use and disposition of 225 loads of the total accumulation. The cause was tried to the court and a jury. Upon verdict of the jury in favor of defendants, judgment was entered that plaintiff take nothing by reason of his complaint. This appeal is from the judgment.

Much of the argument of counsel concerns the effect of the alteration of the lease by defendant Lee, after it had been sent to him for signature, in striking out a provision thereof whereby he was to scatter upon the premises all the manure accumulated thereon; and whether or not, because plaintiff failed to file an affidavit denying the genuineness of the instrument, in its modified form, set out in

the answer, any question may be raised in regard thereto. We are of the opinion these matters do not control the decision, for the reasons following.

The complaint did not make any reference to the lease or modification of it. Where a modification of a contract is relied upon for recovery, such modification must be pleaded. (*Milner v. Earl Fruit Co.*, 40 Ida. 339, 232 Pac. 581.)

The complaint alleged that the manure accumulated from feed grown upon the leased land, and the answer alleged a greater portion thereof had accumulated from feed produced on lands other than those leased by plaintiff. The issue was limited to a determination of the amount of manure accumulated from feed produced on the leased property, and plaintiff was not entitled to claim more. The court cannot grant relief not embraced within the issues. (C. S., sec. 6829; *Angel v. Mellen*, 48 Ida. 750, 285 Pac. 461, opinion filed February 13, 1930; *Brunzel v. Stevenson*, 30 Ida. 202, 205, 164 Pac. 89.)

Defendant Lee does not contend he was entitled to the manure made from the products of the leased property. It has been stated to be the general rule that manure made on a farm directly or indirectly from the products thereof belongs to the farm, and the way-going tenant has no right to remove it. (*Lewis v. Jones*, 17 Pa. St. 262, 55 Am. Dec. 550, note, p. 554.) But it has been held that manure made upon a farm from products not produced thereon is not a part of the realty, and may be held by the tenant. (*Pickering v. Moore*, 67 N. H. 533, 68 Am. St. 695, 32 Atl. 828, 31 L. R. A. 698; *Nason v. Tobey*, 182 Mass. 314, 94 Am. St. 659, 65 N. E. 389; *Snow v. Perkins*, 60 N. H. 493, 49 Am. Rep. 333; note to *Kittredge v. Woods*, 14 Am. Dec. 397.) Holdings to the effect that manure made in the usual course of husbandry upon a farm becomes appurtenant to and is treated as part of the realty and may not be removed or sold by the tenant state the rule applies only to agricultural tenants. (*Brigham v. Overstreet*, 128 Ga. 447, 11 Ann. Cas. 75, 57 S. E. 484, 10 L. R. A., N. S.,

452.) In the case at bar it is shown that the tenant had a large number of cattle on the premises for dairy purposes, which the land was incapable of supporting, and that he purchased for them at different times during the term of the lease considerable and specific quantities of feed from other sources. This and other evidence as to the amount of feed produced on the leased property and the quantity of manure made therefrom was submitted to the jury under appropriate instructions, whose finding thereon we have no reason for questioning.

The modification of the lease by the lessee might be termed a qualified or conditional acceptance amounting to a counter-offer, with the question then arising whether the counter-offer was accepted, under the principles governing offer and acceptance. (1 Williston on Contracts, p. 135, sec. 77; 1 Elliott on Contracts, p. 49, sec. 42; *Phelps v. Good,* 15 Ida. 76, 85, 96 Pac. 216.) It may be taken to be shown that the change was not observed by the lessor, who so testified, although he admitted noticing an interlineation just above the one in question from which it is difficult to suppose the other went unobserved.

Assent may be indicated by acts as well as by words, and may be inferred from the fact that the parties conducted business under the conditional acceptance. (6 R. C. L., p. 609.) If the parties proceed with their contract as if the condition of the acceptance were a part of it, this is as effectual as an acceptance as if the changes had been formally assented to. (1 Elliott on Contracts, p. 50.) The new offer here was communicated by the lessee in returning the lease to plaintiff who received it and had the same recorded, thereby giving notice to the world of the contract of the parties, and they proceeded under it as if the condition of the acceptance were a part of the contract. "Throughout the formation of contracts it is to be observed that not assent, but what the other party is justified as regarding as assent, is essential. Accordingly if an offeree in ignorance of the terms of an offer so acts or expresses himself as to justify the other party in inferring assent,

and this action or expression was of such a character that a reasonable man in the position of the offeree should have known it was calculated to deceive the offeror into the belief that his offer had been accepted, a contract will be formed in spite of the offeree's ignorance of the terms of the offer.'' (1 Williston on Contracts, p. 51, sec. 35.) Failure or inability of a party to read a written contract is not ground for setting it aside. (*Constantine v. McDonald,* 25 Ida. 342, 137 Pac. 531.) Under the circumstances herein, we are of the opinion assent to the modification of the lease might be inferred, and the authorities cited support the conclusion that the lessor was bound thereby. The facts as to this phase of the matter being undisputed, it was a question of law as to which the court did not err in not submitting it to the jury. (6 R. C. L., p. 600.)

The judgment is affirmed; costs to respondents.

Givens, C. J., and Lee, Varian and McNaughton, JJ., concur.