483 P.2d 682

Adelle R. TOEVS, Plaintiff-Respondent,

v.

WESTERN FARM BUREAU LIFE IN-SURANCE COMPANY, a corporation, Defendant-Appellant.

No. 10511.

Supreme Court of Idaho.

April 6, 1971.

3. See F.N. 2.

**152**

Merrill & Merrill, Pocatello, for defendant-appellant.

Parsons & Smith, Burley, for plaintiff-respondent.

DONALDSON, Justice.

This is an appeal from a $50,000 judgment of the district court against a life insurance company by the widow of the insured on the "double indemnity" clause of an insurance policy. There is no dispute as to whether the husband's death was accidental. The principal issues, both at trial and on appeal, are: Whether a contract of life insurance was ever entered into by the parties; and, whether the accidental death (double indemnity) provision of the policy became operative without (1) the insured's having submitted himself to a medical examination; and (2) without the company ever having approved and accepted the application for insurance. The trial court, sitting without a jury, awarded the widow

$50,000 and the life insurance company has appealed from the adverse judgment.

The pertinent facts surrounding this appeal are as follows. On or about April 7, 1965, Walter J. Toevs and his wife Adelle negotiated with Glen R. Cox, an agent for Western Farm Bureau Life Insurance Company, for a $25,000 double indemnity life insurance policy on the life of Walter J. Toevs. Mrs. Toevs signed a document entitled "PART ONE APPLICATION TO THE WESTERN FARM BUREAU LIFE INSURANCE COMPANY, DENVER, COLORADO" on April 7, 1964. After she signed the application, the insurance agent gave Mrs. Toevs another document entitled "CONDITIONAL PREMIUM RECEIPT" which stated in essence that Glen R. Cox (the agent) received $168.75 from Walter J. Toevs as a payment on the first premium of the insurance policy. The insured, Walter J. Toevs, was required to submit to a medical examination because of the amount of the policy ($25,000—double indemnity). He attempted to have one but the doctor was too busy to see him. The record indicates however that Toevs did have a medical examination a little less than a year prior to April 7, 1964. Mrs. Toevs knew that her husband had to have a medical examination before the "sickness" part of the policy became effective, but claims that she understood (from a conversation with the agent, Glen R. Cox, held at the time the application was made) that her husband was covered against accidental death from the date on which the application was filled out and the first premium was paid, viz., April 7, 1964.

On April 21, 1964, Walter J. Toevs died as the result of a gunshot wound. There is no dispute that the insured's death was accidental. An autopsy performed on Mr. Toevs indicated that he was in good physical condition. Subsequent to Toevs' death, the insurance company attempted to return the $168.75 premium payment but it was refused. The insurance company never did issue a policy as a result of the application made by Adelle R. Toevs. In May of 1964, Mrs. Toevs (through her attorney) request-

ed payment of $50,000 from the Western Farm Bureau Life Insurance Company as the amount due her under the policy. Upon the company's refusal to pay, Mrs. Toevs instituted suit against it alleging that she had a right to recover according to the terms of the policy claiming essentially that the "accidental death" portion of the policy came into effect on the date of the application (April 7, 1964) since the agent, Glen R. Cox, made representations to her to this effect.

Subsequent to trial, district court found in favor of the plaintiff (respondent), Adelle R. Toevs, and ordered that she recover $50,000 from Western Farm Bureau Life Insurance Company. The trial judge based his decision largely on the fact that the "specimen policy" which was introduced by the plaintiff (respondent) was ambiguous and confusing with respect to the date upon which coverage was to begin. The trial judge specifically found that the insurance agent made no representations concerning the date upon which insurance coverage was to begin.

The life insurance company has appealed to the Supreme Court from the adverse judgment and although it has assigned almost every finding of fact and conclusion of law made by the trial court as error, they can be reduced to the contention that the trial court erred in its conclusion of law No. 1 wherein it stated that a life insurance contract arose between Adelle R. Toevs and the insurance company upon the execution of the application and payment of the first six months premium.

The principal question to be decided by this appeal is whether the life of Walter J. Toevs was insured by the Western Farm Bureau Life Insurance Company on the day he died. This Court responds to the question in the affirmative. An analysis of the several documents comprising the agreement between the parties, an analysis of the procedure known as conditional premium receipt, and an analysis of the relationship between the parties themselves is essential to an understanding of this Court's decision.

Three documents, all unilaterally prepared by the insurance company, are involved, viz., the application, conditional premium receipt, and the specimen policy. The three share the common characteristics of employing confusing and complicated language which is susceptible of various interpretations and meanings. The specific ambiguity involves the date upon which insurance coverage is to begin.[1] Each of these documents when read alone is confusing; when all three are taken together the task becomes three times as difficult. Thus the provisions of the contract existing between the Western Farm Bureau Life Insurance Company and Adelle R. Toevs were confusing and ambiguous. It has long been the rule of this Court that a contract should be construed most strongly against the party preparing it. Big Butte Ranch, Inc. v. Grasmick, 91 Idaho 6, 415 P.2d 48 (1966); Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976 (1948). Furthermore in cases involving life insurance contracts, where the language of the contractual provision may be given one of two meanings, one of which permits recovery and the other forbidding it, the contract is to be construed in favor of the insured. O'Neil v. New York Life Insurance Co., 65 Idaho 722, 152 P.2d 707 (1944); Watkins v. Federal Life Insurance Co., 54 Idaho 174, 29 P.2d 1007 (1934).

The Court will now discuss the device or procedure employed by the Western Farm Bureau Life Insurance Company known as

---

1. "This policy shall be placed in force by the payment in advance of the premium for a premium interval beginning on the Date of Issue and shall be continued in force by further payment * * *." (Provision of specimen policy).

"That if the application upon which this receipt is issued * * * shall be approved by the Home Office * * * then the policy issued by the company shall by reason of this payment take effect as of the date of said application * * *." (Paragraph 1, Conditional Premium Receipt).

the "Conditional Premium Receipt." By utilization of the "Conditional Premium Receipt" the insurance company benefits in several ways, viz., (1) it has secured a payment from the insured or proposed insured; (2) it secures funds that it incurs for medical examinations and investigations of the insured or proposed insured. See Life Insurance Receipts, The Mystery of the Non-Binding Binder, Comment, 63 Yale Law Journal 523 (1954). It is evident that the insurance company has received considerable benefit from the security provided by the conditional premium receipt. This Court fails to see how any benefit is conferred upon the insured or proposed insured when he pays the first premium and is issued the conditional premium receipt. This is particularly true where, as in this instance, term insurance is purchased. This procedure borders on the unconscionable and while the Court declines to rule the practice such, it nevertheless concludes that when the procedure is practiced by an insurance company it is obvious that the proposed insured or insured has no choice but to accept such procedure or in the alternative, receive no insurance. The parties are not possessed of equal bargaining power and thus this Court may evaluate the contract between them in light of this fact.

"* * * this jurisdiction, like many others, has declared in favor of a liberal construction in favor of the insured to accomplish the purpose for which the insurance was taken out and for which the premium was paid." Rauert v. Loyal Protective Insurance Co., 61 Idaho 677 at 686, 106 P.2d 1015 at 1018 (1940).

"Yet, an insurance policy is not an ordinary contract. It is a complex instrument, unilaterally prepared, and seldom understood by the assured. The same is equally true of the conditional receipt. The parties are not similarly situated. The company and its representatives are expert in the field; the applicant is not. A court should not be unaware of this reality and subordinate its significance to strict legal doctrine. Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 208 A.2d 638 (1965). Nor should a court be obliged to overlook the obvious advantage to the company in obtaining payment of the premium when the application is made. It is a device to avoid the possibility that the applicant will change his mind and revoke his application, or deal with a rival company. Metropolitan Life Ins. Co., v. Grant, 268 F.2d 307 (9 Cir. 1959), Pope, J. concurring. A conditional receipt tends to encourage deception. We do not mean to imply affirmative misconduct by the soliciting insurance agent. We suggest only that if nothing is said about the complicated and legalistic phrasing of the receipt, and the agent accepts an application for insurance together with the first premium payment, the applicant has reason to believe that he is insured. Otherwise, he is deceived." Prudential Insurance Co. of America v. Lamme, 83 Nev. 146 at 148, 149, 425 P.2d 346 at 347, 348 (1967).

Judge Learned Hand in the case of Gaunt v. John Hancock Mutual Life Insurance Co., 160 F.2d 599 (2nd Cir. 1947) held that a provision to the effect that the insurance shall be in effect from the date of the application if the premium is paid in advance gives rise to a contract of insurance immediately upon receipt of the application and payment of the premium and that the proviso that the company shall be satisfied that the insured was acceptable at the date of the application creates only a right to terminate the contract if the company becomes dissatisfied with the risk before a policy is issued. In that case Judge Hand stressed the fact that an application must be construed as it would be taken by the ordinary applicant and that such a person would assume that he was getting immediate insurance for his money and would not assume that he was left uncovered before the insurer approved the risk.

In this case, the district judge made a specific finding to the effect that the insurance agent, Mr. Cox, did not explain or discuss with the insured or with his wife, the respondent, the date upon which the insurance policy would become effective.

In view of this finding, the unequal bargaining power of the two parties, the complex legalistic and ambiguous phrasing used throughout the contract, and the use by the insurance company of the procedure or device known as "conditional premium receipt," this Court holds that a contract of insurance was in existence on the date that the insured died. By this holding the Supreme Court of Idaho is subscribing to the theory known as "temporary contract of insurance." The conditional premium receipt created a temporary contract of insurance subject to a condition, i. e., rejection of Toevs' application by the insurance company. Since rejection did not occur prior to Toevs' death, the company is liable. Prudential Insurance Co. of America v. Lamme, *supra*; Ransom v. Penn Mutual Life Ins. Co., 43 Cal.2d 420, 274 P.2d 633 (1954); Gaunt v. John Hancock Mutual Life Ins. Co., *supra*.

A substantial objection has been lodged against the "temporary contract of insurance theory" since it is claimed that such a contractual construction may allow one who is not insurable for physical reasons to secure insurance coverage merely by submitting an application and paying a premium. The record in the case at bar however discloses that: (1) the insured submitted to a medical examination in conjunction with obtaining another insurance policy just about two years prior to his death; (2) the insured had a complete physical examination on June 25, 1963, nine months before the application for insurance and at that time he was found in good health and insurable; and (3) an autopsy revealed that the insured, Walter J. Toevs, was in good physical condition prior to his accidental death. In light of these additional facts there is no reason to deny recovery.

Judgment affirmed. Costs to respondent.

McQUADE, C. J., and SHEPARD and SPEAR, JJ., concur.

McFADDEN, Justice (dissenting).

The trial court found that the decedent Walter J. Toevs was aware that in conjunction with his wife's application for insurance on his life a physical examination was required. Mrs. Toevs testified that she was aware of the requirement that Mr. Toevs take a physical examination and also testified she went with him to the doctor's office for the examination for the insurance policy, but that the examination was not accomplished. Mrs. Toevs stated that she understood from the agent's remarks that the examination was required for sickness, but the trial court in its memorandum opinion discounted this understanding by Mrs. Toevs.

The facts reflect that Mrs. Toevs did not even read the instruments being discussed by her husband and Mr. Cox on the evening of April 7, 1964, and she testified she only heard intermittent portions of their conversations, she being engaged in household duties. Yet she signed the application form for the insurance as the applicant. This court has held that a person who signs written instruments must be held to some degree of responsibility as to what is contained in those written instruments. Milner v. Earl Fruit Co. of the Northwest, 40 Idaho 339, 232 P. 581 (1925); Hampton v. Lee, 49 Idaho 16, 285 P. 1023 (1930); West v. Prater, 57 Idaho 583, 67 P.2d 273 (1937).

The trial court found no ambiguity existed in the application form signed by Mrs. Toevs, nor in the conditional premium receipt, but the trial court found an ambiguity in the specimen policy. Frankly, I fail to see where there is an ambiguity in these instruments. See Morgan v. State Farm Life Ins. Co., 240 Or. 113, 400 P.2d 223 (1965). The applicable portions of the conditional premium receipt acknowledged receipt of

"the sum of $168.75, which is tendered as a payment on the first premium * * *. It is understood and agreed that this payment is made and accepted subject to the following conditions:

1. [This portion of the premium receipt applies only where no medical ex-

amination is required, and is inapplicable in this case.]

2. If subsequent to the date of said application the Company shall require any medical examination or test of the Applicant * * * or of the person whose life is to be insured under the policy applied for, if other than the Applicant, then any *policy issued pursuant to said application shall take effect as of the date the last requested medical examination or test is completed; * * *.* [Emphasis added].

3. * * *.

4. * * *."

The majority opinion is critical of the appellant's use of the "conditional premium receipt" and holds

"The conditional premium receipt created a temporary contract of insurance subject to a condition, i. e., rejection of Toevs' application by the insurance company. Since rejection did not occur prior to Toevs' death, the company is liable."

In support of that position cases are cited which are reflective of only one line of authority, to which I do not adhere. To my mind the better line of authority rejects the so-called "temporary contract of insurance theory." As illustrative of this other line of authority, see: Machinery Center, Inc. v. Anchor Nat'l Life Ins. Co., 434 F.2d 1 (10th Cir. 1970); Morgan v. State Farm Life Ins. Co., supra; Annot. 2 A.L.R.2d 943, 963; 1 Couch on Insurance (Anderson) § 14:41.

The majority opinion considers the argument that the "temporary contract of insurance theory" may allow one who is not insurable for physical reasons to secure insurance coverage, and disposes of such argument by pointing to the fact the decedent had taken a physical examination about two years before, also an examination on June 25, 1963, and the autopsy reflected him to be in good physical condition. This ignores the realities of the purpose of physical examinations for insurance policies. Mr. Lea, the secretary of the appellant company, explained the purpose of such examinations is to determine whether the company can insure the individual at the rate quoted. Without a current physical examination, there would be no way to determine if the individual could be considered as a standard or substandard risk.

It is my opinion that the decision reached by the majority creates a new contract of insurance between the parties. This court has held that the court by construction cannot create a liability not assumed by the insurer and cannot make a new contract of insurance for the parties. Thomas v. Farm Bureau Mut. Ins. Co. of Idaho, Inc., 82 Idaho 314, 353 P.2d 776 (1960); Coburn v. Fireman's Fund Ins. Co., 86 Idaho 415, 387 P.2d 598 (1963); Miller v. World Ins. Co., 76 Idaho 355, 283 P.2d 581 (1955).

For the foregoing reasons, it is my conclusion that the judgment of the district court should be reversed.