804 P.2d 333

**Kelly Ann WELLS, a Widow, Plaintiff–Appellant–Cross Respondent,**

v.

**UNITED STATES LIFE INSURANCE COMPANY, a foreign corporation, Amway Distributors Association, a National Association, and Amway Distributors Insurance Trust Fund, Defendants–Respondents–Cross Appellants.**

**and**

**John Does I Through II, Defendants.**

**No. 18250.**

Court of Appeals of Idaho.

Jan. 2, 1991.

Brady, Saetrum & Lerma, Chtd., Boise, for appellant. Kenneth R. Arment argued, Boise.

Quane, Smith, Howard & Hull, Coeur d'Alene, for respondents. Randall R. Adams argued, Coeur d'Alene.

WALTERS, Chief Judge.

The appellant, Kelly Wells, filed an action against the respondents, United States Life Insurance Company, Amway Distributors Association and Amway Distributors Insurance Trust Fund, seeking recovery under an insurance policy on the life of her husband, Ray Wells, and requesting punitive damages for the alleged bad faith denial of her claim. The district court dismissed the complaint, on summary judgment, determining that Ray Wells died prior to the effective date of the insurance. The appellant maintains that factual issues exist with respect to whether the respondents may properly deny liability, and that summary judgment was therefore inappropriate. The respondents cross-appeal, challenging the district court's designation of the appellant as the prevailing party and its award of costs to her. As explained below, we affirm the court's order of dismissal. We further vacate the award of costs to the appellant and remand the case to the district court to award costs to respondents.

The relevant facts are as follows. On April 13, 1986, Ray Wells, an Amway distributor, completed and signed an application for insurance coverage of $100,000 under a group life policy offered by the respondents. The application brochure, attached to the application form, described the insurance and stated that the effective date of the insurance was the "first day of the month following the approval of [the] application by the insurance company, provided the first quarterly payment had been received." The application indicated the insurance would be underwritten by United States Life Insurance Company (United States Life). The brochure also stated that if the applicant was unable to perform all of the customary duties and activities of a person of like sex and age on the day the insurance was to begin, coverage would not take effect until after the person resumed normal activity. Ray Wells submitted the application to the designated policyholder, Amway Distributors Insurance Trust Fund (ADITF), along with a personal check for the first quarterly premium. Thirteen days later, on April 26, 1986, Ray Wells disappeared while flying his private airplane in a storm near Lewiston, Idaho. An extensive search failed to discover Wells or his aircraft.

On May 23, 1986, Ray Wells' application for insurance was approved by United States Life, and ADITF issued a policy certificate showing that the effective date was June 1, 1986, and cashed Wells' check for the premium payment. On June 12, 1986, the appellant, through her counsel, wrote ADITF notifying it of Ray Wells' disappearance and asked ADITF what its position was with respect to the loss. ADITF responded in writing, stating: (1) the effective date of coverage was June 1, 1986; (2) that Ray Wells was not covered on the date of his disappearance, April 26, 1986; and (3) that if Mrs. Wells wanted a refund, to notify it by July 31, 1986.

On September 1, 1986, ADITF sent notice to the appellant that the second-quarter premium was due. After consulting with her attorney, the appellant paid the premium. ADITF continued to send quarterly premium notices to the appellant, and the appellant continued to timely pay them, maintaining the policy through August 31, 1987. The total amount of premiums paid by the appellant for insurance on Ray Wells' life was $189.90.

In December, 1986, the appellant filed a petition seeking judicial declaration of her husband's death. The petition named United States Life as a defendant and alleged that Ray Wells was insured for $100,000 at the time of his disappearance. United States Life opposed the declaratory action on the grounds of insufficient proof of death and filed a counterclaim against the appellant, alleging fraud and concealment by her.[1]

In June of 1987, the court entered an order declaring Ray Wells dead. In late July, 1987, Ray Wells' body and airplane were discovered. A certificate of death was issued stating that Ray Wells had died on April 26, 1986, the day of his disappearance.

The appellant submitted to ADITF a copy of the death certificate and demanded payment of the proceeds under the policy. Her demand was refused. The appellant then filed a complaint against the respondents to recover $100,000 in insurance proceeds and $900,000 in punitive damages. The respondents moved for dismissal of the complaint by summary judgment, asserting there was no coverage because Ray Wells' death had occurred prior to the effective date of the insurance policy. Thereafter, the appellant sought to amend her complaint to add new defendants and new claims. At the conclusion of a consolidated hearing on the motions, the district court denied the request to amend, granted the respondents' motion dismissing the com-

1. United States Life's counterclaim alleged that Kelly fraudulently had concealed the fact of her husband's disappearance until after the approval of his application and issuance of the certificate of insurance. The insurance contract was conditioned on the applicant being able-bodied and active on the date the policy went into effect. In granting summary judgment to the respondents, the district court determined that this counterclaim—to set the policy aside for fraud—was moot.

plaint, and ordered the respondents to return $189.90 in unearned premiums paid by the appellant. The court then determined the appellant to be the prevailing party and awarded her costs.

On appeal, we are asked to determine whether the district court erred in dismissing the appellant's complaint on summary judgment. The appellant contends that the respondents are precluded from denying coverage, advancing various equitable theories including the doctrines of temporary insurance, waiver and estoppel. The appellant also asserts the illegality of the policy, and, alternatively, the policy's incontestability clause as bars to the respondents' denial of liability. The appellant further insists that, independent of any contractual rights asserted under the policy, she is entitled to pursue her tort claim of bad faith against the insurers. Finally, the appellant asserts that the trial court erred in refusing to allow her to file an amended complaint. By cross-appeal, the respondents challenge the district court's designation of the appellant as prevailing party and its award of costs to her. We will address the issues of the parties in turn.

## I

In reviewing a lower court's decision on summary judgment, the standard of review is whether there are any genuine issues of material fact and, if not, whether the prevailing party was entitled to judgment as a matter of law. In making those determinations, the reviewing court will construe all facts in the record, together with all reasonable inferences in the light most favorable to the party opposing the motion for summary judgment. I.R.C.P. 56(c); *Lowry v. Ireland Bank,* 116 Idaho 708, 779 P.2d 22 (Ct.App.1989).

## RIGHTS UNDER THE POLICY

### A. The Policy Terms

■ Where the language of an insurance policy is susceptible to but one meaning, it must be given that effect. *Burgess Farms v. New Hampshire Insurance Group,* 108 Idaho 831, 702 P.2d 869 (Ct.App.1985).

Here, the language of the master group life insurance policy for which Ray Wells' application was made stated that the applicant "will be insured on the date stated in writing by United States Life." The policy language further provided that "on the date his insurance is to take effect, a member may be unable to perform all the normal and customary duties and activities of like age and sex. If so, such insurance will take effect on the day after he resumes and performs all such duties and activities for one full day." The certificate of insurance, which was issued following United States Life's approval of Ray Wells' application in May, 1986, stated that the effective date of the policy was June 1, 1986. It is undisputed that Ray Wells died on April 26, 1986. Under the express terms of the policy, the insurance never went into effect; consequently, there was no coverage on the date of Ray Wells' death.

### B. Temporary Insurance

■ The appellant claims that under the doctrine of "temporary insurance," coverage was provided from April 13, 1986, the date of the application. We note, however, that in order for this doctrine to apply there must exist an ambiguity regarding the effective date of insurance. *Toevs v. Western Farm Bureau Life Ins. Co.,* 94 Idaho 151, 483 P.2d 682 (1971); *Permann v. Nationwide Ins. Co.,* 108 Idaho 192, 697 P.2d 1206 (Ct.App.1985). Whether ambiguity exists in insurance applications, receipts or policies is a question of law over which we exercise free review. *Permann,* at 194, 697 P.2d at 1208.

The appellant and her husband received the application form in an *Am-o-gram,* a news letter circulated by Amway to its distributors. The information contained in the two-page insurance brochure, attached to the application form, stated in plain language that the effective date of insurance would be the first day of the month following the approval of the application by the insurance company, provided the first quarterly payment had been received. The appellant testified in her deposition that she read the brochure. We note that, even if

approval of the application was simultaneous with the submission of the application, it was clear from the application brochure that the policy would not go into effect before the first day of the next month—May 1, 1986—still five days after Ray Wells' death.

In her brief, however, the appellant claims she believed the insurance would begin at the time the application was made because, in other instances in which she had submitted a premium payment with her application for insurance, conditional coverage was immediate. We hold that the appellant's subjective beliefs, which are contrary to the express statements communicated to her by the respondents, do not give rise to an ambiguity with respect to the effective date of the insurance. Absent such ambiguity, the doctrine of temporary insurance does not apply.

## C. Reasonable expectations

■ Next, the appellant urges this Court to apply the doctrine of "reasonable expectations"—a doctrine not requiring an ambiguity for its application—to preclude the respondents from denying coverage in this case. We decline to do so. In *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 601, 701 P.2d 217, 221 (1985), and *Foremost Ins. Co. v. Putzier*, 102 Idaho 138, 627 P.2d 317 (1981), the Idaho Supreme Court expressly declared this doctrine not to be the law in Idaho. We are obliged to follow that determination. Accordingly, we reject the appellant's argument under the theory of reasonable expectations.

## EQUITABLE RIGHTS AT VARIANCE WITH THE POLICY

The appellant also asserts rights at variance with the terms of the policy. She argues that, regardless of the parties' initial understanding of the policy terms, the respondents' subsequent conduct in billing, accepting and retaining premium payments on Ray Wells' life precludes them from asserting as a defense the fact that Ray Wells predeceased the effective policy period. To this end, the appellant raises the

doctrines of waiver, equitable estoppel and quasi-estoppel.

## A. Waiver

■ Waiver requires a showing of voluntary relinquishment of a known right. *Brand S Corp. v. King*, 102 Idaho 731, 734, 639 P.2d 429, 432 (1981). An insurer cannot be deemed to have waived a right based upon material facts, the existence of which were unknown to it. *See Northwest Roofers and Employers Health and Security Trust Fund v. Bullis*, 108 Idaho 368, 699 P.2d 1382 (1985). The appellant suggests that, because the respondents knew of Wells' disappearance, knowledge of his consequent death may also be imputed to them. However, the fact that Wells died when his plane disappeared was not known to either party for nearly fifteen months following his disappearance. We therefore conclude that the circumstances presented in this case are insufficient to establish the appellant's claim of waiver.

## B. Equitable Estoppel

■ The doctrine of equitable estoppel has four elements. They are: (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) the party asserting estoppel did not know or could not discover the truth; (3) the false representation or concealment was made with the intent that it be relied upon; and (4) the person to whom the representation was made or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice. *Theriault v. A.H. Robins Co.*, 108 Idaho 303, 307, 698 P.2d 365, 369 (1985).

In reviewing the record before us, we find no showing that respondents made any false representation which could have induced the appellant to believe that by maintaining the policy into the future, the inception date of the policy would be changed. The respondents never represented that any portion of the premium payments would be applied to a period before June 1, 1986, the date the policy went into effect. The respondents clearly communicated to

the appellant their position with respect to the period of coverage, and the appellant sought the advice of counsel prior to making any further payments. *Compare Lewis v. Continental Life and Accident Co.,* 93 Idaho 348, 461 P.2d 243 (1969) (insurer's agent falsely represented that insured would be covered under proposed new policy, inducing him to relinquish coverage under existing policy); *Farmers & Merchants' Bank v. Hartford Fire Insurance Co.,* 43 Idaho 222, 253 P. 379 (1926) (insurer's agent misrepresented scope of coverage, inducing a change in insurers); *Mull v. United States Fidelity & Guar. Co.,* 35 Idaho 393, 206 P. 1048 (1922) (insurer who represented that loss would be covered and who continued to accept premium payments after learning of change in law voiding coverage, held estopped to deny coverage). Thus, we conclude that the appellant's claim of equitable estoppel is unsupported by the facts, and was properly rejected by the district court.

## C. Quasi–Estoppel

■ The appellant also raises the doctrine of quasi-estoppel. That doctrine is properly invoked against a person asserting a right inconsistent with a position previously taken by him with knowledge of the facts and his rights, to the detriment of the person seeking to apply the doctrine.[2] *Evans v. Idaho State Tax Comm'n,* 97 Idaho 148, 150, 540 P.2d 810, 812 (1975); *Keesee v. Fetzek,* 111 Idaho 360, 362, 723 P.2d 904, 906 (Ct.App.1986). As discussed above, the respondents have constantly maintained their position that Ray Wells was not covered on the date of his disappearance; at no time did the respondents take a position

with respect to the date of Wells' death.[3] Moreover, the appellant's own testimony reveals that she believed her husband was still alive. Thus, in continuing to accept quarterly premium payments, the respondents assured the appellant that there would be a life insurance policy in force in the event Ray Wells survived into the policy period. Under these circumstances, the respondents' subsequent billings for premiums due was not inconsistent with their position that there was no coverage for Ray Wells on the date he disappeared.

■ Nor do we believe that the respondents are liable as a result of their failure to refund the appellant's premium payments prior to the disposition of this case. In December, 1986, the appellant filed an action asserting that Ray Wells was covered at the time of his disappearance. The appellant brought the action with full knowledge of the respondents' contrary position and their offer to return the premium payments. When Wells' remains were identified in July, 1987, the issue of coverage already was in litigation, and any tender of a premium refund at that time obviously would have been refused by the appellant. Under these facts, tender would have been a vain and useless act, and as such was not required. *See Cook v. Desler,* 52 Or.App. 5, 627 P.2d 885 (1987). We conclude therefore that the district court correctly determined the doctrine of quasi-estoppel to be inapplicable.

## ILLEGALITY OF CONTRACT

■ The appellant contends that the life insurance contract failed to meet all of the

---

**2.** This doctrine, as applied to insurance cases, has also been referred to as "election"—a cross between waiver and estoppel. The doctrine confronts the insurer with the limited range of choice under which it cannot collect a new premium without losing defenses known to any of its agents, even if not known to the agent collecting the premium. *See* R. Keeton, INSURANCE LAW § 6.1, at 345 (1971). *Cf. Keesee v. Fetzek,* 106 Idaho 507, 681 P.2d 600 (Ct.App. 1984), *appeal after remand,* 111 Idaho 360, 723 P.2d 904 (Ct.App.1986) (distinguishing "quasi-estoppel" from "election *of remedies*"). Thus, an insurer cannot treat the policy as void for the purpose of its defense to an action for a loss

thereafter occurring, and at the same time treat it as valid for the purpose of earning and collecting further premiums. *See also Mull v. United States Fidelity & Guar. Co.,* 35 Idaho 393, 400, 206 P. 1048 (1922); *Markoff v. New York Life Insurance Co.,* 369 F.Supp. 308, 312 (1973), *affirmed,* 530 F.2d 841 (9th Cir.1976).

**3.** In opposing the appellant's petition for judicial declaration of Ray Wells' death, the respondents alleged only that the mere fact of Wells' disappearance was insufficient proof of his death.

**166**

group requirements prescribed by I.C. §§ 41–2002, –2007 and therefore was illegal and unenforceable. On this basis, the appellant argues that the respondents are precluded from asserting the policy provisions containing the effective date of the insurance. However, the enforceability of the contract is unrelated to the fact that Wells' death occurred prior to the effective date of the policy bargained for by the appellant and her husband, and thus is of no consequence to her claim for relief. The facts before us fail to demonstrate any material relationship between the alleged illegality and the injury for which the appellant seeks relief. Accordingly, we hold this issue properly was dismissed on summary judgment.

## INCONTESTABILITY CLAUSE

We next address the appellant's argument concerning the applicability of the "incontestability clause," which was contained in both the application brochure and the master policy. The appellant contends that there exist factual issues with respect to the applicability of the clause, and that the district court erroneously granted the respondents' motion for summary judgment.

Pursuant to statute, the group policy contained a provision warranting that the insurance company "will not contest this policy after it has been in force for two years from its date...." I.C. § 41–2012. Because Wells predeceased the effective date of the insurance, the policy was never "in force" within the meaning of the statute. Consequently, the insurer's covenant not to contest the policy is inapplicable, and summary judgment was appropriate.

## BAD FAITH CLAIM

The appellant challenges the district court's dismissal of her claim of bad faith against the respondents, insisting that she is entitled to pursue her remedy in tort regardless of the district court's dismissal of her claim of contractual rights under the insurance policy. We disagree.

Idaho recognizes a common-law tort action for an insurer's bad faith in settling the claims of its insured. *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 100, 730 P.2d 1014, 1020 (1986). Thus, an insured may recover in tort where its insurer unreasonably and in bad faith withholds payment of a valid claim and where liability under the policy is later established. *See White*, at 96, 730 P.2d at 1016; *see also, Linscott v. Rainier Nat'l Life Ins. Co.*, 100 Idaho 854, 606 P.2d 958 (1980). In the present case, we have determined that the respondents are not liable under the policy, and consequently the appellant is not entitled to any proceeds. Nor are we persuaded by the appellant's argument that she is entitled to prosecute her claim for punitive damages based on the respondents' allegedly wrongful conduct in filing a fraud claim against her: the filing of the claim must be shown to have resulted in the denial, or delay in payment, of proceeds to which the appellant was entitled. *See Reynolds v. American Hardware Mut. Ins. Co.*, 115 Idaho 362, 766 P.2d 1243 (1988). Because the respondents were not obligated to pay the appellant's claim under the policy, they are not subject to liability for their alleged bad faith refusal to do so. We therefore affirm the district court's dismissal of the appellant's claim of bad faith.

## II

In her final assignment of error, the appellant avers that the district court improperly denied her motion for leave to amend her complaint. The proposed amended complaint sought to add three nonresident defendants and to raise new issues relating to misrepresentation, wire fraud, mail fraud and RICO. The district court denied the motion on the ground that the new allegations stated no claim upon which Wells could recover, and on the ground that the motion was untimely.

The decision whether to allow a party to amend its pleadings is left to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of that discretion. I.R.C.P. 15(a); *Bissett v. State*, 111 Idaho 865, 727 P.2d

1293 (Ct.App.1986). The refusal to allow a plaintiff to amend its complaint, where the record contains no allegations which, if proven, would entitle the plaintiff to the relief claimed, is not an abuse of discretion. I.R.C.P. 12(b)(6); *Bissett*, at 868–69, 727 P.2d at 1296–97.

Here, the alleged injury for which the appellant seeks redress is the failure of any insurance policy to be in force at the time of Ray Wells' death. However, the acts and omissions alleged in the proposed amended complaint relate to the respondents' false representations concerning the integrity and legality of the administration of ADITF. As discussed above, the allegedly fraudulent representations of the respondents are not materially related to the effective date of the insurance or to the fact that Wells died outside the policy period: had the respondents' false statements been as represented, Ray Wells still would not have been covered by any insurance policy on the date of his death.

However, the appellant presents a novel argument, claiming that "but for" the respondents' false representations, she and her husband never would have waited for the respondents' group insurance applications to be disseminated; instead they would have timely applied for and obtained a valid policy for $100,000 elsewhere, which would have been in effect at the time of Ray Wells' death. We find this argument to be without merit.

The appellant's argument relies on her allegation that the respondents falsely represented their group policy as superior to other insurance plans on the market. These representations, the appellant maintains, induced her and her husband to refrain from obtaining insurance protection while they waited to receive application forms which were to be disseminated through the *Am-o-gram* magazine. However, the record discloses nothing to indicate the respondents undertook a duty to provide insurance to the Wells while they waited for the applications. Nor does the appellant claim that any such representations were made. Yet the appellant seeks to hold the respondents liable for her own decision to remain uninsured until she and her husband could join the group plan available through Amway. The court will not create a new liability not assumed by the insurer. *Occidental Fire & Cas. Co. v. Cook*, 92 Idaho 7, 9, 435 P.2d 364, 366 (1967). Thus, the respondents may not be held liable for the Wells' failure to maintain an insurance policy while they awaited application forms for insurance they hoped to procure in the future.

In conclusion, we agree with the trial court's determination that the new allegations contained in the proposed amended complaint failed to set forth any claim upon which the appellant could recover. Because we uphold the trial judge's decision on this basis, we need not address the alternative ground of timeliness, also given by the court as a reason for denying the appellant's motion. Accordingly, we hold the court did not err in denying leave to file the appellant's amended complaint.

### III

In their cross-appeal, the respondents challenge the district court's designation of the appellant as the prevailing party and its award of costs to her. We note that the identification of the prevailing party rests within the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of that discretion. *Chadderdon v. King*, 104 Idaho 406, 659 P.2d 160 (Ct.App.1983). In exercising its discretion, the trial court is to consider the final judgment or the result obtained in the action in relation to the relief sought by the respective parties, whether there were multiple claims or issues, and the extent to which each of the parties prevailed on those claims or issues. I.R.C.P. 54(d)(1)(B); *see Bodine v. Bodine*, 114 Idaho 163, 167, 754 P.2d 1200, 1204 (Ct.App.1988).

Here, the appellant filed a complaint requesting the policy proceeds of $100,000, plus punitive damages in the amount of $900,000. The respondents denied liability under the policy. The district court granted summary judgment in favor of the respondents and dismissed the appel-

**168**

lant's complaint. From these facts, we conclude that the respondents prevailed on the complaint which sought one million dollars in damages. Although the trial court did order the respondents to return to the appellant $189.90 in unused premium payments, this relief was not sought by the appellant, but rather accrued to her as a result of the district court's decision on the respondents' motion for summary judgment. We hold that the district court's award to the appellant failed to comply with the legal standards set forth in I.R.C.P. 54(d)(1)(B), and therefore was an abuse of discretion. Accordingly, we vacate the award of costs to the appellant and we remand the case to the district court with instructions to enter an order reflecting the respondents as the prevailing parties, and to determine their costs pursuant to Rule 54(d)(1).

## SUMMARY

In conclusion, we hold that the district court did not err in granting judgment to the respondents dismissing the appellant's complaint. We further conclude that the court properly denied the appellant's motion for leave to file an amended complaint. However, we vacate the district court's award of costs to the appellant and we remand the case with directions that the respondents be awarded their costs. The respondents are entitled to a further award of costs on appeal in an amount to be determined pursuant to I.A.R. 40. No fees awarded on appeal. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979).

SWANSTROM and SILAK, JJ., concur.