*28 P.3d 380*

**Kenneth McGILVRAY, Ermajean McGilvray, husband and wife, and Stephany McGilvray, minor daughter of Kenneth McGilvray and Ermajean McGilvray, Plaintiffs–Appellants,**

v.

**FARMERS NEW WORLD LIFE INSURANCE COMPANY, Defendant–Respondent.**

No. 25577.

Supreme Court of Idaho, Boise, January 2001 Term.

July 6, 2001.

Douglas W. Crandall, Boise, argued for appellants.

Elam & Burke, P.A., Boise, for respondent. Jeffrey A. Thomson argued.

WALTERS, Justice.

Kenneth and ErmaJean McGilvray appeal from the district court's summary judgment dismissing all of their claims related to the denial of life insurance benefits upon the death of their infant son, Tylar McGilvray. We affirm the dismissal of the action.

## FACTUAL AND PROCEDURAL BACKGROUND

Shortly after his twin sons, Tylar and Kyle, were born on May 4, 1993, Kenneth McGilvray contacted an insurance agent to purchase life insurance policies on his wife, his daughter Stephany, and the two boys. The agent was L. Brent Pfleger, from whom the McGilvrays had previously bought insurance coverage. On June 1, 1993, Pfleger asked Kenneth the questions contained on the individual applications for insurance and filled in the answers according to the information provided by Kenneth. Kenneth signed the applications in the spaces provided, but he later claimed he had not read through them.

Kenneth elected to pay the premiums on the new life insurance policies as he had been paying the life insurance premiums on his own policy previously purchased from Pfleger. Premium payments were to be made to Pfleger and deposited into the "Life Insurance Premium Account," which was a checking account maintained by Pfleger. Kenneth was a signatory on the account and had authorized automatic withdrawals of premium amounts to be paid to the insurance company from the account. On June 18, 1993, Kenneth paid $70.00 to Pfleger, and he paid another $63.34 on August 4, 1993. These amounts were deposited into the account, but they were only estimates of premiums to be applied generally to the family's pending life insurance applications. The monies were only to be transferred to Farmers New World Life on the date specified in the automatic bank withdrawal.

Farmers New World Life had received the signed application for insurance on Tylar's life as of June 28, 1993. At that time, the first of the payments described above was on deposit in the Life Insurance Premium Account managed by Pfleger. At the time of Tylar's death on August 16, 1993, the second payment had also been deposited into the Life Insurance Premium Account.

The McGilvrays made a claim for benefits on the life insurance policy in Tylar's name. Farmers New World Life denied the claim, asserting that no premium payment had been received with the application for life insurance to put a policy in force. The McGilvrays contacted the Idaho Department of Insurance to investigate the matter.

On March 26, 1996, the McGilvrays brought suit against L. Brent Pfleger, agent, and Farmers New World Life Insurance Company, alleging breach of contract, estoppel, bad faith, breach of implied covenant of good faith and fair dealing, and intentional and/or negligent infliction of emotional distress. The McGilvrays filed a motion for leave to amend the complaint to add new claims including recovery of punitive damages, which was denied after a hearing.

Pursuant to stipulation, the district court dismissed the McGilvrays' action against Pfleger with prejudice. On November 17, 1997, the district court issued its decision and orders on the various motions filed by the McGilvrays and Farmers New World Life. The district court denied the McGilvrays' motion for partial summary judgment, determining there was no contract for temporary insurance in effect when Tylar died. The district court granted, in part, Farmers New World Life's motion for summary judgment, dismissing the claims of Stephany McGilvray and dismissing the remaining allegations except the claim alleging breach of contract of an actual policy of insurance.

The McGilvrays filed a second motion for summary judgment seeking a declaration that a policy of insurance was in effect on August 16, 1993, the date of Tylar's death. Farmers New World Life submitted a cross-motion for summary judgment seeking dismissal of the sole remaining breach of contract claim. The district court granted the defendant's motion on April 19, 1999. Concluding that the effective date of the policy

issued in Tylar's name was four days *after* the infant's death, the district court dismissed the action against Farmers New World Life. The McGilvrays filed a timely appeal from the district court's order dismissing the action.

## ISSUES

The McGilvrays present the following issues on appeal:

1. Did the district court err in concluding that no temporary insurance was in effect on the date of Tylar's death?

2. Did the district court err in concluding that no contract of insurance existed on the child's date of death?

3. Did the district court err in dismissing the plaintiff's bad faith claim?

4. Did the district court err in denying the plaintiffs' motion to amend the complaint to add a punitive damage claim?

## STANDARD OF REVIEW

■ When this Court reviews a district court's grant of summary judgment, it uses the same standard properly employed by the district court originally ruling on the motion. *McKay v. Owens*, 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). Summary judgment dismissal of a claim is appropriate when the plaintiff fails to submit evidence to establish an essential element of a claim. *Nelson By and Through Nelson v. City of Rupert*, 128 Idaho 199, 911 P.2d 1111 (1996). Summary judgment must be entered against the non-moving party who fails to make a showing sufficient to establish existence of an element, which is essential to his case and upon which he will bear the burden of proof at trial. *Smith v. Meridian Joint School Dist. No. 2*, 128 Idaho 714, 918 P.2d 583 (1996); *State v. Shama Resources Ltd. Partnership*, 127 Idaho 267, 899 P.2d 977 (1995); *Badell v. Beeks*, 115 Idaho 101, 102, 765 P.2d

126, 127 (1988), *citing Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). If the nonmoving party cannot make a showing on elements essential to his claims, "there can be no genuine issue of material fact since a complete failure of proof concerning an essential element on the nonmoving party's case necessarily renders all other facts immaterial." *Celotex, supra*, 477 U.S. at 322–23, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

## DISCUSSION

*I. The plaintiffs' breach of contract claim was properly dismissed.*

A. Temporary Insurance Contract

■ On appeal, the McGilvrays argue that the district court should have concluded that temporary insurance on Tylar was in effect on the day he died. First, they argue the conditions which gave rise to a contract of temporary insurance in *Toevs v. Western Farm Bureau Life Ins. Co.*, 94 Idaho 151, 483 P.2d 682 (1971), are present here and should operate to bind Farmers New World Life to provide coverage for Tylar's death. The McGilvrays also assert that all of the conditions set forth on the receipt form used by the insurance company were met, thus the company was obligated under the temporary insurance agreement to pay benefits upon Tylar's death.

In *Toevs*, this Court affirmed the lower court's decision holding the insurer liable for double indemnity on the death of the insured, even though Toevs had not yet obtained a medical examination required in conjunction with his application for insurance when he died from an accidental shooting. *Id.* at 155, 483 P.2d at 686. The Court considered the ambiguous language in the application and in the receipt as to the effective date of coverage, as well as the unequal bargaining power between the insurer and the insured whereby the insurer required payment in full of the premium with the application. *Id.* Specifically, the Court held that the insurer's use of a "conditional premium receipt," which allowed the company to rescind and withdraw its promise of coverage, created a temporary contract of insurance. *Id.*

The conditions that led the Court to adopt the doctrine of temporary insurance in *Toevs*, however, are not found in the McGilvrays' case. There was no delivery of a conditional premium receipt to the McGilvrays at the time the application for insurance was completed. The payments that were to be applied to the insurance premiums were only made subsequent to the date the application was signed and had yet to be processed by means of the automatic withdrawal authorization procedure.

█ In order for the doctrine of temporary insurance to apply, there must exist an ambiguity regarding the effective date of insurance. *Wells v. United States Life Ins. Co.,* 119 Idaho 160, 804 P.2d 333 (Ct.App. 1991), *citing Toevs, supra.* Because the evidence is clear that Kenneth and Pfleger had never discussed whether temporary insurance was available on Tylar's application or when specifically the policy on Tylar's life was to become effective, the McGilvrays cannot reasonably claim an ambiguity in the information conveyed to them as to when the insurance would take effect. Kenneth's belief, therefore, that coverage began upon payment of the premium was not based on representations made by Pfleger nor derived from language found in the application itself, which Kenneth testified he had not read. The district court correctly concluded in this case, that there was not the unequal bargaining power between the insurer and the insured, which caused the Court in *Toevs* to hold that temporary insurance was in effect. We uphold the district court's decision distinguishing the McGilvrays' claim from *Toevs* and affirm the court's holding that temporary insurance was not in force at the time of Tylar's death.

Next, the McGilvrays contend that they met all of the conditions for temporary insurance as outlined in the receipt, which was a part of the application. The McGilvrays claim they are entitled to receive death benefits for Tylar from Farmers New World Life, pointing to language in the receipt that states: "Temporary coverage for the amount applied for (excluding ADB) or $50,000, whichever is less, will begin when the primary Applicant completes, signs and delivers this Application with at least 1/12th of the minimum first year's premium to the Agent." They assert that coverage began when the premium payment was made and submitted with Tylar's application and that coverage was in effect on the date of Tylar's death.

█ The premium receipt, also known as a conditional receipt, is an instrument that affords insurance coverage to the applicant between the date of the application and the actual issuance of the policy. *Heideman v. Northwestern Nat'l Life Ins. Co.,* 546 N.W.2d 760 (Minn.App.1996); *Smith v. Westland Life Ins. Co.,* 15 Cal.3d 111, 123 Cal.Rptr. 649, 539 P.2d 433 (1975) (contract of insurance immediately created upon receipt of the application and payment of the premium is not terminated until the insurer has actually rejected the application and by appropriate notice communicated such rejection to the insured and refunded the premium payment to the insured). In Idaho, a conditional premium receipt creates a temporary contract of insurance, *Toevs v. Western Farm Bureau Life Ins.Co., supra,* which is separate and apart from the application for insurance. *Metropolitan Life Ins. Co. v. Daniels,* 745 So.2d 1062 (Fla.App.1999); *Bickford v. Metropolitan Life Ins. Co.,* 114 N.H. 237, 317 A.2d 573 (1974).

The express terms for a contract of temporary insurance are embodied in the receipt referred to by the McGilvrays. In addition to the payment of a premium along with the application, however, are the requirements that (1) the primary applicant be more than fifteen days and less than 70 years of age on the date the application is signed; and (2) questions 1, 2, 3, and 4 on page 4 of the application be truthfully answered "No." These eligibility requirements, or conditions precedent, must be satisfied for a contract to materialize. *See Valley Bank v. Christensen,* 119 Idaho 496, 808 P.2d 415 (1991); *W.L. Scott, Inc. v. Madras Aerotech, Inc.,* 103 Idaho 736, 653 P.2d 791 (1982); *Hoff Companies, Inc.v. Danner,* 121 Idaho 39, 822 P.2d 558 (Ct.App.1991). Here, the agent testified that he left unanswered the health questions on page 4, Section J, related to temporary insurance, because Kenneth indicated that he was unable to make a premium payment

when the application was completed and signed.

The district court determined that the parties never discussed temporary insurance coverage and that the amounts deposited into the life insurance premium account to be later withdrawn for premium payments did not create a contract of temporary insurance. The district court also concluded that the receipt the McGilvrays rely on to prove a contract of temporary insurance was never given to them and thus cannot form the basis of a contract. It is not necessary to decide whether the McGilvrays' application was completed, signed and delivered "with" the required premium amount, because we affirm district court's conclusion on an alternative ground. We hold that no contract for temporary insurance was formed because of a failure of the express condition that the applicant provide answers to four questions in Section J. *See Rexburg Realty, Inc. v. Compton*, 101 Idaho 466, 616 P.2d 245 (1980). Therefore, the district court did not err in dismissing the McGilvrays' claim based upon the assertion of a contract of temporary insurance.

### B. Actual Contract of Insurance

■ In denying Farmers New World Life's first motion for summary judgment, the district court determined that there existed a factual question as to whether a premium had been paid for life insurance coverage for Tylar. The district court, however, granted the insurance company's second motion for summary judgment on the breach of contract claim, concluding that the contract of insurance did not provide coverage for Tylar's death, which occurred four days before the effective date of the policy.

If a party moves for summary judgment on the basis that no genuine issue of material fact exists with regard to an element of the nonmoving party's case, the nonmoving party must establish the existence of an issue of fact regarding that element. *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 869 P.2d 1365 (1994). It was the McGilvrays' burden, therefore, to prove in this case that a contract of insurance was in effect on the date of Tylar's death.

The facts asserted by Farmers New World Life on the second summary judgment motion were as follows. The application for Tylar's insurance was approved on August 10, 1993, at which time the company prepared a policy to be delivered to the McGilvrays. The policy contained a section entitled "Definitions," where "issue date" of the policy was defined as "the effective date for your coverage." The policy specifications page identified the issuance date as August 20, 1993, which was a date selected by the company. There was no evidence that the agent and the McGilvrays had discussed the actual date when the policy would go into effect.

■ Because an insurance policy is a contract, the rights and remedies of the parties are established within the four corners of the policy. *Bantz v. Bongard*, 124 Idaho 780, 864 P.2d 618 (1993); *Kootenai County v. Western Casualty and Surety Co.*, 113 Idaho 908, 750 P.2d 87 (1988). Where the language of an insurance policy is susceptible to but one meaning, it must be given that effect. *Burgess Farms v. New Hampshire Ins. Group*, 108 Idaho 831, 702 P.2d 869 (Ct.App. 1985). The district court correctly decided that the policy unambiguously stated the effective date of coverage as August 20, 1993. Thus, under the express terms of the policy, the insurance on Tylar's life did not go into effect prior to the date of his death.

The McGilvrays argue on appeal that the district court erred in finding that Farmers New World Life had not collected the insurance premium on Tylar's policy because the evidence showed that two payments had been made to the agent prior to the date of Tylar's death. This assertion is relevant to the McGilvrays' claim that the insurance coverage for Tylar went into effect before the date stated in the policy. According to John Patton, a claims manager for Farmers New World Life who testified at the summary judgment hearing, if an insurance policy is physically delivered to the insured and a premium is collected prior to the policy's stated effective date, Farmers New World Life would consider the delivery date to be the effective date of the policy. Relying on

Patton's testimony, the McGilvrays argue for coverage prior to August 20, 1993, by virtue of the payments made to their agent.

Assuming *arguendo* that the payments made by the McGilvrays were premiums that were collected for insurance coverage for Tylar, there was no evidence presented to the district court that the policy had ever been delivered. Faced with the undisputed fact that Farmers New World Life had not yet delivered the policy to the McGilvrays, the district court did not err in holding as a matter of law that the contract of insurance never took effect to provide coverage on Tylar's life. Accordingly, the district court's decision awarding summary judgment to Farmers New World Life on the breach of contract claim was appropriate.

## II. The district court's dismissal of the bad faith claim on summary judgment was not error.

 The McGilvrays argue that the district court should not have dismissed their bad faith claim on summary judgment. They assert that their claim should have survived the summary judgment because a material issue of fact existed as to whether the premium payments that were deposited into Pfleger's life insurance premium account were received by Farmers New World Life, despite the company's repeated denials that any payments were received. The McGilvrays contend that bad faith on the part of Farmers New World Life is manifest, and the company should be held liable for its repeated denials and subsequent, unreasonable refusal to pay the life insurance benefits.

 An insured may recover in tort where its insurer unreasonably and in bad faith denies or withholds payment of a valid claim. *Roper v. State Farm Mut. Automobile Ins. Co.*, 131 Idaho 459, 461, 958 P.2d 1145, 1148 (1998); *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 96, 730 P.2d 1014, 1016 (1986). In addition, an insured asserting a claim of bad faith must show that the claim was not fairly debatable; that the denial or failure to pay was not the result of a good faith mistake; and that the resulting harm is not fully compensable by contract damages. *Simper v. Farm Bureau Mut.*

*Ins. Co. of Idaho,* 132 Idaho 471, 474, 974 P.2d 1100, 1103 (1999); *Lucas v. State Farm Fire & Cas. Co.,* 131 Idaho 674, 677, 963 P.2d 357, 360 (1998); *Anderson v. Farmers Ins. Co. of Idaho,* 130 Idaho 755, 759, 947 P.2d 1003, 1007 (1997), *citing White v. Unigard Mut. Ins. Co., supra.* An insurer does not act in bad faith if it challenges the validity of a "fairly debatable" claim. *Roper, supra,* 131 Idaho at 461, 958 P.2d at 1147; *Anderson, supra,* 130 Idaho at 759, 947 P.2d at 1007; *White, supra,* 112 Idaho at 100, 730 P.2d at 1020. When a claim is fairly debatable, the insurer is entitled to dispute the claim and will not be deemed liable for failure to pay the claim. *Greene v. Truck Ins. Exchange,* 114 Idaho 63, 753 P.2d 274 (Ct.App.1988). *See Drake v. Milwaukee Mutual Ins. Co.,* 70 Wis.2d 977, 236 N.W.2d 204, 208 (1975) (insurer is entitled to debate a fairly debatable claim, whether the debate concerns a matter of fact or law).

The district court held that the McGilvrays' claim was "certainly fairly debatable." On review, we must determine whether a genuine issue of material fact exists as to whether the McGilvrays' claim that the payments they made to Pfleger caused the coverage to begin at some time before the stated effective date of the policy and Tylar's death was reasonably in dispute and thus, fairly debatable.

In *Wells v. United States Life Ins. Co.,* 119 Idaho 160, 804 P.2d 333 (Ct.App.1991), the appellate court affirmed the district court's determination that the insurance never went into effect, under the express terms of the policy, and thus, there was no coverage. *Id.* at 163, 804 P.2d at 336. The Court of Appeals also dismissed Wells' bad faith claim against the insurer because the allegedly wrongful conduct (the filing of a fraud claim against Wells) was not shown to have resulted in the denial or delay in payment of proceeds to which the appellant was entitled. *Id.* Similar to *Wells,* the policy's express terms in this case fixed the effective date of the policy as August 20, 1993, which clearly afforded no coverage for Tylar's death on August 16, 1993. The checks written by the McGilvrays to Pfleger's account that were earmarked for premium payments were not

**46**

the cause of the ultimate denial of coverage under either the temporary insurance or under the actual insurance theories. We held earlier in this opinion that failure to complete the insurance questions regarding temporary insurance and failure of delivery of the policy, respectively, precluded a finding of liability against Farmers on the theories presented. Thus, insistence by Farmers New World Life that it had never received premium payments with regard to Tylar's policy does not serve as an issue that requires analysis under the "fairly debatable" concept. Accordingly, we affirm the district court's dismissal of the bad faith claim.

*III. The district court properly exercised its discretion in denying the plaintiffs' motion to amend the complaint to add a punitive damages claim.*

The McGilvrays contend that the district court erred in denying their motion to amend their complaint to add a claim for punitive damages. Repeating the arguments made on their bad faith claim, the McGilvrays rely on what they contend were less than honest denials by Farmers New World Life that any payments had been received on Tylar's policy to assert that they should have been allowed to seek punitive damages for unconscionable rejection by Farmers New World Life of the claim for benefits upon Tylar's death.

On a motion to add punitive damages under I.C. § 6–1604, the plaintiff is required to show a reasonable likelihood that it could prove by a preponderance of the evidence that the defendant acted oppressively, fraudulently, wantonly, maliciously or outrageously. *See Vaught v. Dairyland Ins. Co.,* 131 Idaho 357, 362, 956 P.2d 674 (1998); *O'Neil v. Vasseur,* 118 Idaho 257, 796 P.2d 134 (Ct. App.1990). Because we have upheld the dismissal on summary judgment of the bad faith claim and the relief being sought thereunder, we need not address the punitive damages issue any further.

## CONCLUSION

■ The district court did not err in holding that the express requirements for the formation of a contract of insurance, either actual or temporary, were not met and that no coverage was thus in effect at the time of Tylar's death. The district court properly held that the McGilvrays failed to show the existence of a genuine issue of material fact to preclude the entry of summary judgment on the claim of bad faith for which the plaintiffs sought exemplary damages. The question as to whether the district court erred in denying the plaintiffs' motion to add a claim for punitive damages was rendered moot by our decision upholding dismissal of the bad faith claim.

The dismissal of the breach of contract claims and the bad faith claim is affirmed. Costs to respondent, Farmers New World Life Insurance Company.

Chief Justice TROUT, Justices SCHROEDER and KIDWELL and Judge GOFF, pro. tem., concur.