702 P.2d 869

**BURGESS FARMS, a partnership,
Plaintiff-Appellant,**

v.

**NEW HAMPSHIRE INSURANCE
GROUP, an insurance corporation, individually and through its affiliate or
Associated Insurance Company, Granite State Insurance Company, Defendants-Respondents,**

**and**

**Taber-McDonald Insurance Agency,
Inc., and Greg McDonald,
Defendants-Appellants.**

Nos. 14803, 14804.

Court of Appeals of Idaho.

June 20, 1985.

Thomas H. Church of Church, Church, Snow & Tuft, Burley, for plaintiff-appellant, Burgess Farms.

Robert M. Tyler, Jr., of Elam, Burke, Evans, Boyd & Koontz, Boise, for defendants-appellants, Taber-McDonald Ins. Agency and Greg McDonald.

Thomas B. High of Benoit, Alexander & Sinclair, Twin Falls, for defendants-respondents.

SWANSTROM, Judge.

Burgess Farms brought this suit to recover from New Hampshire Insurance Group (hereinafter "New Hampshire") under a policy which covered, among other perils, vandalism and malicious mischief. New Hampshire contended that because Burgess Farms could not prove the destruction of its property was willful and malicious the loss was not covered. In the alternative, Burgess Farms sought recovery from the Taber-McDonald Insurance Agency, Inc. (hereinafter "Taber-McDonald") and Greg McDonald, who procured the policy from New Hampshire for Burgess Farms. The gist of this cause of action was that McDonald had negligently failed to procure the requested coverage or had failed to inform Burgess Farms that no such coverage was available. The district court granted New Hampshire's motion for summary judgment, but denied Taber-McDonald's and Greg McDonald's similar motion. The court certified the order as a final judgment under I.R.C.P. 54(b) and Burgess Farms, Taber-McDonald and Greg McDonald have appealed. We reverse in part and remand.

Briefly the facts are as follows. In May 1979, Burgess Farms obtained a property owner's policy from New Hampshire through Greg McDonald of Taber-McDonald. The policy provided coverage for the damage to or destruction of potatoes Burgess Farms stored in its potato cellars. Among the perils covered by the policy were vandalism and malicious mischief. The potato cellar relevant to the present case was built slightly below ground level. The doors to the cellar were reached by going down a dirt incline, the upper end of which opened on a county road. An earthen dike was constructed near the road each year to prevent water run-off from flowing down the incline and flooding the cellar, thus damaging or destroying the potatoes stored there. At the time in question, the dike was twelve to fourteen inches in height and two feet wide at its widest point.

On or about May 20, 1980, the dike was breached. As a result of rainstorms, a substantial amount of water flowed through the breach, down the incline and into the cellar. Tire tracks clearly showed that a vehicle had driven through the dike and down the incline. Footprints leading from the mysterious vehicle to the man-door of the cellar indicated that the occupant or occupants made at least one trip from the vehicle to the cellar. Within min-

utes of the discovery of the breach, the dike was repaired; but all efforts to save the potatoes were in vain. It is disputed whether the potatoes had any salvage value; in any event, the entire contents of that ill-fated cellar were carted off to the desert and dumped.

Burgess Farms filed a claim with New Hampshire, which denied coverage. As noted, Burgess Farms then brought suit. In granting summary judgment to New Hampshire, the district court held that the record, including the depositions, did not reveal facts sufficient to bring the destruction of the potatoes under the policy. Burgess Farms, Taber-McDonald and Greg McDonald appealed, raising issues respecting the propriety of granting summary judgment to New Hampshire. Because we hold that genuine issues of material fact exist as to whether the loss here was covered under the policy, a recitation of the other issues raised would serve no useful purpose.

The scope of coverage of an insurance policy under a vandalism and malicious mischief endorsement has been the object of much litigation. Out of this litigation has sprung a myriad of different tests and, hence, results. We in Idaho now add our voice to the throng for the very first time. The policy in question provided, in part, as follows: "The perils of Vandalism and Malicious Mischief, as defined and limited herein, are added to and made a part of the 'Perils Insured Against' section.... " Vandalism and malicious mischief were defined as "only the willful and malicious damage to or destruction of the property covered." Burgess Farms would interpret this broadly to mean any unusual destruction of the property proximately caused by a wrongful act. New Hampshire Insurance Group urges the stricter, more literal interpretation that there must be an intent or purpose to damage or destroy the insured property.

Under the terms of the policy, vandalism and malicious mischief require the conjunction of two elements: (1) an intentional act; and (2) a malicious purpose or,

simply, malice. Once these elements are established, it is then incumbent upon the party claiming coverage to show that the intentional act was the proximate cause of the damage or destruction. Courts are nearly unanimous in holding that damage or destruction by vandalism or malicious mischief must be the result of an intentional act to be covered by an insurance policy such as the one in this case. *See, e.g., Rich v. United Mutual Fire Ins. Co.,* 328 Mass. 133, 102 N.E.2d 431 (1951) (damage inflicted negligently not covered by vandalism endorsement in policy); *Cruse v. Government Employees Ins. Co.,* 391 S.W.2d 1 (Mo.Ct.App.1965) (damage caused when fleeing felons ran a red light and collided with insured automobile held not covered because collision was accidental, rather than willful and intentional, and policy did not include "collision" coverage).

The second element, a malicious purpose, presents more difficulty. Some courts require that the party claiming coverage prove an intent to damage or destroy the insured property. *See, e.g., Thomas v. Pennsylvania Fire Ins. Co.,* 163 So.2d 202 (La.Ct.App.1964). A few courts require, in addition, that the person causing the damage or destruction harbor actual malice, or ill will, toward the property owner or the property itself. *See, e.g., Rea v. Motors Ins. Corp.,* 48 N.M. 9, 144 P.2d 676 (1944); *Imperial Casualty & Indemnity Co. of Omaha, Neb. v. Terry,* 451 S.W.2d 303 (Tex.Civ.App.1970). Other courts specifically reject this requirement. *See, e.g., State Automobile Mutual Ins. Co. v. Trautwein,* 414 S.W.2d 587 (Ky.Ct.App. 1967); *Cruse v. Government Employees Ins. Co., supra.* In all of these cases, the absence of proof of a fixed intent to damage or destroy property is fatal to a claim of coverage under a policy which includes a vandalism and malicious mischief endorsement. *See Imperial Casualty & Indemnity Co. of Omaha, Neb. v. Terry, supra.*

A growing number of courts, on the other hand, do not limit the definition of malice to "an intent to damage or destroy." These courts have adopted a broader defini-

tion which includes acts done with such reckless and wanton disregard for the rights of the property owner as to be the equivalent of intent. *See, e.g., Livaditis v. American Casualty Co. of Reading, Pennsylvania*, 117 Ga.App. 297, 160 S.E.2d 449 (1968); *Hatley v. Truck Ins. Exchange*, 261 Or. 606, 494 P.2d 426 (1972); *King v. North River Ins. Co.*, 278 S.C. 411, 297 S.E.2d 637 (1982). In *Frontier Lanes v. Canadian Indemnity Co.*, 26 Wash.App. 342, 613 P.2d 166, 169 (1980), *overruled in part, on other grounds, Graham v. Public Employees Mutual Ins. Co.*, 98 Wash.2d 533, 656 P.2d 1077 (1983), it was held that "[p]roperty has been damaged 'willfully and maliciously' [contract language] if the damage results from an intentional act from which damage was *reasonably expected to result.*" (Emphasis added.) In *Hatley v. Truck Ins. Exchange*, 494 P.2d at 431, the Oregon court held that "property has been damaged 'willfully and maliciously' [again, contract language] if the damage results from an intentional act from which damage *manifestly would or could result.*" (Emphasis added.) The reason why courts have been turning in increasing numbers to this broader definition of malice is simple—it meets public expectations regarding the meanings of vandalism and malicious mischief.

> [Vandalism] should not be construed in its narrow sense as requiring a specific intent to injure or destroy the particular article involved, but should be construed in accordance with the concept given to it by the popular mind as involving *any unusual destruction wrought in the doing of a wrongful act.*

Annot., 23 A.L.R.3d 1259, 1261 (1969) (Emphasis added).

A person, under this broader standard, need not intend a specific type of damage to specific property. It is enough that damage of some kind to some property should or could have been expected to result from the intentional act. At trial, proof of this prerequisite need only be by a preponderance of the evidence. Proof to a "reasonable certainty" is not required.[1] In addition, under either the narrow or broad definition, malice may be express or implied. Many cases stand for the proposition that malice may be presumed or inferred from an unlawful act. *See, e.g., State Automobile Mutual Ins. Co., v. Trautwein, supra; King v. North River Ins. Co., supra. But see Larson v. Fireman's Fund Ins. Co.*, 258 Iowa 348, 139 N.W.2d 174 (1965).

■ The differences in defining malice—whether it is defined narrowly or broadly—present an issue of contractual construction. Where the language of an insurance policy "is susceptible to but one meaning, it must be given effect, for a court cannot by construction create liability nor make a new contract for the parties." Sinclair, *Construction of Insurance Contracts in Idaho*, 17 Idaho L.Rev. 475, 478 (1981). However, where the terms of the policy are ambiguous, "special rules of construction apply to insurance contracts to protect the insured." *Id.* Here, malice is not defined in the policy. Thus an ambiguity exists as to the scope of coverage, that scope being affected by the meaning attached to malice. The special rule of construction applicable here is that "all ambiguities in insurance policies are to be resolved in favor of the insured." *Linn v. North Idaho District Medical Service Bureau, Inc.*, 102 Idaho 679, 690, 638 P.2d 876, 887 (1981). In other words; "insurance policies are to be construed most liberally in favor of recovery." *Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Ins. Co.*, 95 Idaho 501, 507, 511 P.2d 783, 789 (1973). Resolving the ambiguity in favor of Burgess Farms, we hold that the broader definition of malice should apply.

■ As noted, in addition to the conjunction between an intentional act and malice, the act must be the proximate cause of the damage or destruction. *Cf. Graham v. Public Employees Mutual Ins. Co.*, 98

---

**1.** We emphasize this point out of some concern that by later quoting language used by the district judge in this case we may leave doubt as to which standard of proof is applicable.

Wash. 533, 656 P.2d 1077 (1983) (not involving vandalism or malicious mischief, but overruling a case that did and which also required a "direct, violent and efficient cause"). Proximate cause was defined in the *Graham* case, as:

that cause "which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the event, and without which that event would not have occurred." *Stoneman v. Wick Constr. Co.*, 55 Wash.2d 639, 643, 349 P.2d 215 (1960). Where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought, the insured peril is regarded as the 'proximate cause' of the entire loss. [Citations omitted.]

It is the efficient or predominant cause which sets into motion the chain of events producing the loss which is regarded as the proximate cause, not necessarily the last act in a chain of events. 656 P.2d at 1081. The question of proximate cause is normally one for the jury. *Clark v. Chrishop*, 72 Idaho 340, 241 P.2d 171 (1952). "[I]t is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that it may be a question of law for the court." *Graham v. Public Employees Mutual Ins. Co.*, 656 P.2d at 1081.

Turning to the case before us, the district court held:

[I]t must be demonstrated that the act complained of was committed with the "intent" or the "expectancy" that damage would reasonably result. In certain situations, however, malice may be presumed where under the circumstances it clearly appears that an intent to damage is the only explanation reasonably consistent with the facts.

. . . .

Applying these cases to the facts of the case at bar, it is clear that the requisite intent to damage the potatoes cannot be shown by direct evidence. If any-

thing, malice must be inferred from the circumstances of the act. In the cases where malice has been presumed, it was shown that any person who did the act complained of would know that the natural, logical, and necessary consequences of the act would be damage to the property. It is the conclusion of the court that the instant case does not fall within the above class of cases. This is not the type of factual situation where it can be said with reasonable certainty that only a person intending damage would do such an act. The breaching of the dike by unknown person or persons could as easily have been accomplished through negligence, or as an incident to an attempted theft. The act, in and of itself, is simply not the sort of thing that happens *only* where malice is present. [Emphasis original.]

The court, therefore, granted New Hampshire's motion for summary judgment.

 A motion for summary judgment under I.R.C.P. 56(c) "should be granted only when the pleadings, depositions and admissions, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Anderson v. Ethington*, 103 Idaho 658, 660, 651 P.2d 923, 925 (1982). Where, as here, a jury trial has been requested, "the facts are to be liberally construed in favor of the party opposing the motion, who is also to be given the benefit of all favorable inferences which might be reasonably drawn from the evidence." *Smith v. Idaho State University Federal Credit Union*, 103 Idaho 245, 247, 646 P.2d 1016, 1018 (Ct.App.1982). "Whatever is within the range of reasonable deduction from all of the evidence is a legitimate inference and conclusion and is within the province of the jury." *United States v. 3969.59 Acres of Land*, 56 F.Supp. 831, 834–35 (D.Idaho 1944). We are unable to determine from the district court's decision which definition of malice it applied. After reading the record, however, and applying the broad definition of malice, we hold that summary judgment for New Hampshire was inappropriate.

Construing the facts in favor of Burgess Farms, we first hold a jury could reasonably infer that the act of driving through the dike was an intentional act. As noted above, the district court held that the dike "could as easily have been [breached] through negligence." A jury, however, could rule out negligence or accident by drawing the permissible inference, from the nature of the tire tracks, that the vehicle was deliberately driven down the incline to the potato cellar. It is not necessary that the person driving the vehicle intended to breach the dike, as we discuss below, so long as that person intended to drive the vehicle where he did.

■■■■ As a starting point for our discussion, it is clear from the policy language itself that malice—the keystone of "vandalism and malicious mischief" coverage—is present when there is an intent to damage or destroy property. Beyond this point, and based upon our discussion of the need to settle upon a broader meaning of the term, we now hold that property has been damaged "willfully and maliciously" if the damage results from an intentional act from which damage was reasonably expected to result. *Frontier Lanes v. Canadian Indemnity Co., supra.* This rule encompasses the proposition that an intentional act done with reckless and wanton disregard for the rights of a property owner is equivalent to "an intent to damage or destroy property." Such an intent and act are sufficient to gain the protection of "vandalism and malicious mischief" coverage of an insurance policy provided that it is also shown that the act was the proximate cause of the damage complained of.

In his deposition, Ed Burgess testified that he had checked the dike two to three days before the breach was discovered and that it had rained for two days after the check. As a result of the rain, the ground was soft and muddy. In fact, in breaching the dike, the vehicle sank over fourteen inches through the dike and into the surface of the ground beneath. Considering the facts, a jury could find that a reasonable person should have known the dike would be breached, at least to some degree, by the act of driving over it. A jury could also determine that a reasonable person should have known the purpose of the dike was to prevent flooding of the cellar and that it was reasonable to expect flooding to occur as a result of the breach in the dike. Depending upon the facts and inferences found, the record is also sufficient in our view for a jury to find that driving over the dike was a wanton act, in reckless disregard for the rights of the owner.

■■■■ We have previously noted cases from other jurisdictions holding that malice may be presumed or inferred from an unlawful act. We do not believe, however, that the lawfulness or unlawfulness per se should be the indicator of malice. We believe the focus should be upon the nature of the act, regardless of whether the act is lawful or not. Under some circumstances, a jury could be instructed to presume malice from a particularly egregious set of facts. *See, e.g., State Automobile Mutual Insurance Company v. Trautwein, supra.* Under other circumstances, as in this case, the facts may give rise to a permissible inference that the party causing the damage did so intentionally or recklessly and knew or reasonably should have expected that damage would result, thus establishing malice. Of course, whether the facts raise a rebuttable presumption or a permissible inference, or no hint of malice at all, is a threshold question for the trial court. It is an evidentiary question susceptible to no concrete standards although we, as well as the practicing bar, might wish it otherwise. We can only hold that the facts before us cannot give rise to a presumption, but *may* give rise to an inference. This question is in the hands of the district judge upon remand. Finally, we believe that a jury could determine that the act of driving through the dike was the proximate cause of the destruction of the potatoes.

■■■■ In summary, we hold that the destruction of the potatoes could, under the circumstances of this case, be covered by the vandalism and malicious mischief endorsement in the policy issued by New

Hampshire to Burgess Farms. Coverage is dependent upon disputed facts and we thus cannot say either that it is definitely covered or that it is not. Summary judgment for New Hampshire was therefore inappropriate. Finally, Taber-McDonald and Greg McDonald have appealed from the order denying their motion for summary judgment which sought dismissal of the action against them. We will not address the merits of the alleged error here, nor will we disturb the ruling of the district court. An order denying a motion for summary judgment is not appealable. *Wilson v. De-Board*, 94 Idaho 562, 494 P.2d 566 (1972).

The order of the district court is reversed in part. The cause is remanded for further proceedings consistent with this opinion. Costs to appellant, Burgess Farms. No attorney fees awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.