# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42859

| | | |
|---|---|---|
| TRENT GEARHART, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| and | ) | Boise, January 2016 Term |
| | ) | |
| RONALD M. GEARHART, BRANDI L. MC MAHON, | ) | 2016 Opinion No. 83 |
| | ) | |
| | ) | Filed: July 27, 2016 |
| Plaintiffs, | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MUTUAL OF ENUMCLAW INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County.  Hon. Juneal C. Kerrick, District Judge.

The judgment of the district court is <u>affirmed</u>.

Ewing Anderson, P.S., Spokane, Washington, for appellant. Brad E. Smith argued.

Seiniger Law Offices, P.A., Boise, for respondent. Wm. Breck Seiniger, Jr. argued.

_____

J. JONES, Chief Justice

Mutual of Enumclaw Insurance Company ("Enumclaw" or "Appellant") appeals a summary judgment requiring it to pay the policy limit of $300,000 on each of two separate insurance policies for the benefit of Trent Gearhart ("Trent" or "Respondent").[1]

_____

[1] At the time suit was filed in this case, Trent was a minor. Therefore, the suit was filed on his behalf by his parents. Prior to the appeal in this case, Trent reached the age of majority and his parents were dismissed from the case by the district court.

1

On January 14, 2011, Trent was severely injured in an automobile accident caused by an underinsured motorist ("UIM"). After the accident, Trent's parents, Ronald M. Gearhart ("Ronald") and Brandi L. McMahon ("Brandi"), who are divorced, each attempted to collect on their separately held auto insurance policies with Enumclaw. Each of those policies provided maximum coverage of $300,000 for accidents caused by underinsured motorists.

Enumclaw contended that because of anti-stacking language in the policies, the total UIM benefit under the combined policies was limited to $300,000. The district court held on summary judgment that the UIM anti-stacking provision in each policy was invalid and, therefore, ruled that Enumclaw was obligated for the full $300,000 policy limit on both policies. Enumclaw timely appealed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On or around January 14, 2011, Trent Gearhart and Tina Palmer were driving in Tina's brother's 2010 Chevrolet Impala. Trent was in the passenger seat and Tina was driving. Tina was negligent and caused an accident. The accident left Trent with a severe brain injury, which resulted in permanent cognitive defects. It is not disputed for the purposes of this action that the damages suffered by Trent are in excess of $600,000.

There were three insurance policies that covered the accident: (1) a Farmers Insurance policy held by the owner of the Impala; (2) an auto insurance policy with Enumclaw, purchased and held by Brandi; and (3) a separate auto insurance policy with Enumclaw, purchased and held by Ronald. Trent was a beneficiary under both of the Enumclaw policies. The Enumclaw policies each provided for $300,000 in UIM coverage. UIM benefits accrue to a beneficiary in the event that the beneficiary is injured in an automobile accident where the responsible party's auto insurance is insufficient to compensate the beneficiary for the harm suffered.

The UIM sections of both of the Enumclaw policies contained identical "Other Insurance" clauses:

> If there is other applicable similar insurance **we** will pay only **our** share. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. If this policy and any other policy providing similar insurance apply to the **accident**, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy. However, insurance **we** provide with respect to a vehicle **you** do not own shall be excess over any other collectible insurance.

2

The first two sentences of the clause are a pro-rata provision, the third sentence is an anti-stacking provision, and the fourth sentence is an excess provision. Respondent has thus far been paid a total of $300,000 between the settlement with Farmers Insurance and payments made by Enumclaw.[2]

On July 3, 2013, Respondent's parents filed a complaint alleging four claims: (1) "breach of contract" for Enumclaw's failure to pay $300,000 in UIM benefits under each of the Enumclaw policies; (2) "the tort of bad faith" for Enumclaw's refusal to pay the amounts due under the contract and for engaging in "adjusting practices" that were "designed to deprive Plaintiffs of the benefits owed to them"; (3) "punitive damages" for Enumclaw's "extreme deviation from reasonable standards of conduct" performed "with malice, fraud, oppression, wantonness, gross negligence and/or recklessness"; and (4) attorney fees.

Enumclaw filed a motion for summary judgment, contending that the UIM anti-stacking provision clearly and unambiguously limited Trent's maximum entitlement to UIM benefits under the combined Enumclaw policies to $300,000. Respondent filed a competing motion for summary judgment, arguing that: (1) the mirroring excess provisions in each of the Enumclaw policies create a conflict, because each policy cannot provide coverage in "excess" of the other; (2) where "other insurance" (Other Insurance) clauses conflict, they are "rejected in toto"; (3) the UIM Other Insurance clause should be rejected in full, including the anti-stacking provision; and (4) anti-stacking provisions are against public policy because they serve to deprive the insured of benefits that are needed to protect them from losses for which there otherwise would be no coverage.

On December 2, 2013, the district court granted Trent's motion for summary judgment and denied Enumclaw's. The district court opined that the excess provisions of the two policies conflicted "because, if applied strictly, each policy states that it is only excess to the other." Accordingly, the court held the entire other insurance clause, including the UIM anti-stacking provision, must be disregarded and "each policy must be applied independently." Enumclaw filed a timely appeal.

## II. ISSUES ON APPEAL

1. Did the district court err in granting Trent's motion for summary judgment with respect to his breach of contract claim?

---

[2] Shortly after the accident, Trent's parents settled all of Trent's claims against Farmers Insurance for $99,000. That amount was credited against the amount owing on the Enumclaw policies and Enumclaw paid the rest.

3

2. Is Trent entitled to attorney fees on appeal?

### III. STANDARD OF REVIEW

"On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion." *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 192 P.3d 1000, 1003 (2012). Summary judgment is proper when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* "Whether a provision in an insurance policy is ambiguous is a question of law over which this Court exercises free review." *Markel Int'l. Ins. Co., Ltd. v. Erekson*, 153 Idaho 107, 109, 279 P.3d 93, 95 (2012).

### IV. ANALYSIS

Enumclaw asserts that the district court erred in holding the Other Insurance clause to be unenforceable because it was not relying on the excess provision "to deny its obligation to pay UIM benefits." According to Enumclaw, the excess provision "was not and is not relevant to the facts of this case and the application of the anti-stacking provision sought to be enforced by Enumclaw." On the other hand, Trent asserts that the anti-stacking provision is ambiguous and must be construed in his favor.

The Court agrees that the anti-stacking provision should be the focus of inquiry in this case. The district court declined to apply the anti-stacking provision after concluding that the conflicting excess provisions in the two policies required the entire Other Insurance clause to be discarded, but did not directly consider the anti-stacking provision. The issue is whether the anti-stacking provision is ambiguous or, perhaps, violative of public policy.

This Court has been sensitive to the situation of insurance buyers in light of their unequal bargaining power vis-à-vis insurance carriers. "The general rule is that, because insurance contracts are adhesion contracts, typically not subject to negotiation between the parties, any ambiguity that exists in the contract must be construed most strongly against the insurer." *Arreguin v. Farmers Ins. Co. of Idaho*, 145 Idaho 459, 461, 180 P.3d 498, 500 (2008).

> [W]hen interpreting their insurance policies, we do not expect policyholders to know how most courts around the country have construed certain words or to have the knowledge of those who have spent their careers working in or with the insurance industry. "Unless contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the

4

parties.'" *Armstrong v. Farmers Ins. Co. of Idaho*, 147 Idaho 67, 69, 205 P.3d 1203, 1205 (2009).

*Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 320–21, 233 P.3d 1221, 1242–43 (2010). "A provision that seeks to exclude the insurer's coverage must be strictly construed in favor of the insured. . . . The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage." *Id.*

The language employed in the Other Insurance provision of the two Enumclaw policies is confusing to the extent of being an ineffective barrier to the coverage afforded by both policies. The provision reads:

> If there is other applicable similar insurance **we** will pay only **our** share. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. If this policy and any other policy providing similar insurance apply to the **accident**, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy. However, insurance **we** provide with respect to a vehicle **you** do not own shall be excess over any other collectible insurance.

Good luck to the average insurance buyer in deciphering the meaning of this provision. Enumclaw highlights the third sentence, providing where there is any other policy that applies to the same accident "the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy." Does this mean that one aggregates all of the applicable policy limits and then the total of the limits constitutes the highest limit of any one policy? While one might question the advisability of such a conclusion, it is the conclusion that the language employed would lead a reasonable insurance buyer to reach. It is not the "clear and precise language" necessary to restrict coverage.

Enumclaw points to policy language in *Erland v. Nationwide Ins. Co.*, 136 Idaho 131, 30 P.3d 286 (2001), which it claims is similar to its policies and was apparently approved by this Court. The cited language in *Erland* reads, "if more than one policy applies, total limits applicable will be considered not to exceed the highest limits amount of any one of them." *Id.* at 134, 30 P.3d at 289. The language in *Erland* is significantly different. It does not state that the maximum limit of liability "under all the policies" shall be the highest applicable limit of liability. Rather, it says that the total limits will not exceed the highest limits of any one policy. There is no implication that the limits of all of the policies shall be aggregated in determining the limit of liability.

5

Enumclaw cites to *Couch on Insurance* to support its reading of the anti-stacking provision in its policies. However, the language in the cited section of *Couch* is similar to the *Erland* language, rather than the Enumclaw language. *Couch* says:

> A provision in a tortfeasor's automobile liability policy or policies, covering vehicles owned by him or her, barring stacking of benefits under policies issued to the insured by the insurer and limiting the insurer's liability to the highest limit of liability under any one policy, if not in conflict with any statute or public policy, is valid.

STEVEN PLITT ET AL., COUCH ON INSURANCE § 169:35 (3d ed. 2015). Again, *Couch* does not suggest that the limits of all the policies be combined or aggregated in determining the limit available under any one policy.

Insurers often contend that anti-stacking provisions are designed to keep insureds with multiple policies from being overcompensated for their injuries. However, that is not a concern in this case because, as Enumclaw acknowledged in its opening brief, "Trent [Gearhart] was seriously injured in [the] accident, and it is not disputed for purposes of this action that his damages exceeded the coverages available under all policies at issue in this case." Indeed, this case exemplifies what the Idaho Legislature intended to address in Idaho Code section 41-2502(1), dealing with uninsured and underinsured motorist coverage. As stated in *Hill v. Am. Family Mut. Ins. Co.*, 150 Idaho 619, 625, 249 P.3d 812, 818 (2011):

> Because I.C. § 41-[2502(1)] is designed to remedy the public-safety problem created by underinsured drivers, it is a remedial statute. It is a well-known canon of statutory construction that remedial legislation is to be liberally construed to give effect to the intent of the legislature.

(citation and internal quotation marks omitted). The *Hill* court continued, "[t]he Legislature clearly enacted the UIM amendments to protect the citizens of this State from being undercompensated for their injuries, and exhaustion clauses impose a substantive, not merely procedural, obstacle in front of accident victims seeking UIM benefits." *Id.* at 627, 249 P.3d at 820. In *Hill*, we declined to allow an exhaustion clause to act as a barrier to obtaining UIM benefits. Here, the barrier to full compensation is the anti-stacking provision in the Enumclaw policies.

It is difficult to see how the public policy enunciated in *Hill* is advanced by allowing Enumclaw to cause Trent to be undercompensated for his injuries by imposing the barrier of the anti-stacking provision under the circumstances of this case. It must be recalled that Trent's parents each purchased an Enumclaw policy, each paying the required premium in order to

6

obtain $300,000 in UIM benefits for the protection of their child. As noted above, Enumclaw concedes for purposes of this action that Trent's damages "exceeded the coverages available under all policies at issue in this case." If the barrier sought to be imposed by Enumclaw is allowed to be imposed, Trent will end up getting undercompensated by more than half. Thus, either his parents or perhaps the taxpayers will end up having to bear the additional costs for his medical care.

It is posited that the anti-stacking provisions must be upheld in order to make insurance affordable and available to other prospective insureds. However, it is not clear that this is particularly accurate under the circumstances of this case. Both of Trent's parents bought Enumclaw policies that purportedly covered their child for up to $300,000 in UIM benefits in the event of an accident. If the parents had decided to purchase just one policy with a much higher UIM benefit, it is debatable that the premium would have been more than twice as much. Indeed, it is intuitive that one single policy with a substantially higher limit would have likely been less than the cost of two separate policies with lower limits. Since the record does not disclose the premium costs that might have been involved under either scenario, it is debatable as to whether or not public policy would be better served by enforcing the anti-stacking limit contended for by Enumclaw under the facts of this case. What we do know with some certainty, however, is that reversal of the district court's judgment would result in Trent being substantially undercompensated for his injuries, even though reasonable insurance buyers would be excused if they were to conclude that two separate $300,000 UIM policies purchased by two separate purchasers would be available to cover injuries exceeding $600,000. We therefore affirm the district court's holding, but on the ground that the actual language employed in the Enumclaw policies is confusing to the extent that it is ineffective to establish a barrier to recovery of Trent's actual damages in the full amount of the limit provided in each of the two Enumclaw policies.[3]

### V. ATTORNEY FEES

Trent has requested attorney fees on appeal pursuant to Idaho Code section 41-1839(1). That provision allows for an award of reasonable attorney fees where an insurer has failed to pay the amount justly due under an insurance policy for a period of 30 days after proof of loss has been furnished to the insurer. There is no doubt here that Enumclaw has had knowledge for quite

---

[3] Where the lower court reaches the correct result on an incorrect theory, this Court will affirm the order on the correct theory. *Markel Int'l. Ins. Co. Ltd. v. Erekson*, 153 Idaho 107, 113, 279 P.3d 93, 103 (2012).

some time of the fact that Trent's damages exceeded the limits of both of its policies. Therefore, we award attorney fees to Trent under section 41-1839(1).

## VI. CONCLUSION

The judgment of the district court is affirmed, although on different grounds. Trent is awarded fees and costs on appeal.

Justice BURDICK, and Justice Pro Tem KIDWELL CONCUR.

W. JONES, Justice

I respectfully dissent from the majority's opinion because it is founded solely upon speculation and it completely ignores the issue presented by this case. The issue that deserves this Court's analysis is whether the conflicting UIM excess clause affects the enforceability of the non-conflicting UIM anti-stacking clause. Indeed, this was the issue addressed by the district court and the briefing of both parties. First, I will address my disagreements with the majority opinion.

"Where the language of an insurance policy is susceptible to but one meaning, it must be given that effect." *McGilvray v. Farmers New World Life Ins. Co.*, 136 Idaho 39, 45, 28 P.3d 380, 386 (2001) (citing *Burgess Farms v. New Hampshire Ins. Group*, 108 Idaho 831, 702 P.2d 869 (Ct. App. 1985)). Here, there is only one reasonable interpretation of the plain language of the anti-stacking clause: the UIM coverage of Brandi and Ronald's policies together is limited to $300,000. The anti-stacking clause provides: "If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy." In this case, Brandi and Ronald each held separate Enumclaw auto insurance policies listing Trent as a beneficiary; thus, two policies providing similar insurance applied to the same accident. Each of Brandi and Ronald's policies limited its own liability at $300,000 in UIM coverage. Thus, the "highest applicable limit under any one policy" must be $300,000. This is the only reasonable interpretation of "under any one policy." The majority's suggestion that the clause could be construed as aggregating the limits of all applicable policies is nonsensical. Indeed, it requires reversing the language of the clause completely. There simply is no reasonable way to reconcile the "under any one policy" language with the majority's irrational and distorted interpretation.

By no means am I suggesting that insurance contracts are simple agreements that every person will easily understand. On the contrary, most insurance clauses express complex concepts and, consequently, insurance contracts must be carefully reviewed to be fully grasped. However, there is a significant difference between complex language and ambiguous language. "[A] party's failure to determine the ordinary meaning of the words used in a contract does not make it ambiguous." *Swanson v. Beco Const. Co., Inc.*, 145 Idaho 59, 63, 175 P.3d 748, 752 (2007). But here, the anti-stacking clause is neither ambiguous nor complex. Its plain language serves to limit the maximum benefits available where multiple policies exist to the maximum benefit provided "under any one policy." How hard is that to understand?

The majority obscures the simplicity of the anti-stacking clause by suggesting that it requires aggregating the policy limits. Such a suggestion is absurd, especially considering that this Court enforced a nearly identical anti-stacking clause in *Erland v. Nationwide Ins. Co.*, which will be discussed herein. 136 Idaho 131, 134, 30 P.3d 286, 289 (2001). Despite the relevance of *Erland*, demonstrated by the fact that it was analyzed by the district court and the Appellant's briefing, the majority turned a blind eye to the case.

The bottom line is that the Enumclaw policies protected Trent from an underinsured driver by providing $300,000 in UIM benefits. $300,000 is the amount of UIM coverage Brandi and Ronald selected. There is no argument proffered as to why Brandi and Ronald did not contract for a higher amount, nor is there a contention that they were in some way forced to buy only $300,000. Ultimately, Enumclaw should not be on the hook for Brandi and Ronald's decision to only purchase $300,000 of UIM coverage. Of course I wish Trent had limitless UIM coverage such that he was fully compensated for his injuries, but it is not within the purview of this Court to disturb a valid, unambiguous insurance contract. Nevertheless, the majority, under the banner of public policy, deemed an unambiguous policy ambiguous, and awarded Trent more money. This is the first step on a slippery slope.

It is worth noting that the majority completely departed from the district court's analysis of the case. The district court held that the UIM excess clause contained within the Other Insurance Subsection in each of the Enumclaw polices created a conflict; therefore, the district court disregarded the entire Other Insurance Subsection despite the fact that the remaining clauses, namely the anti-stacking clause, did not create a conflict themselves. While I believe, based on *Sloviaczek v. Estate of Puckett*, 98 Idaho 371 565 P.2d 564 (1977), which will be

9

discussed herein, that the district court erred by disregarding the non-conflicting anti-stacking clause, the more important observation is that the majority avoided the important issue presented by this case. The majority dodged the relevant issue – whether conflicting language in a UIM provision requires disregarding the entire UIM provision – and instead, concluded that the anti-stacking clause was "confusing," an argument which neither Trent, nor the district court discussed.

It bears repeating that the fundamental flaw in the majority's opinion is the suggestion that the anti-stacking clause could be read to require aggregating the policy limits. In fact, there is nothing in the policy that even hints at such an interpretation. Furthermore, the majority supports its conclusion with irrelevant claims and speculation, which I will address in turn. Starting with the irrelevant claims made by the majority, I acknowledge that Trent's damages exceed the available coverage; however, his damages are irrelevant to the analysis of the anti-stacking clause. Additionally, the public policy from *Hill v. American Family Mutual Insurance Co.* is irrelevant to this case for two reasons. 150 Idaho 619, 625, 249 P.3d 812, 818 (2011). First, *Hill* dealt only with an exhaustion clause and it is difficult, if not impossible, to see how an exhaustion clause is relevant to the analysis of an anti-stacking clause. *Id.* at 621, 249 P.3d at 814. Second, in *Hill*, the exhaustion clause functioned as a complete barrier to UIM coverage. *Id.* Conversely, here, the enforcement of the anti-stacking clause results in $300,000 of UIM coverage. With regard to the majority's speculation, it posits that the cost of a single policy with a substantially higher UIM limit would be less than the cost of Brandi and Ronald's respective policies. While an insurance expert could appropriately remark on the topic, the majority most certainly cannot. The majority has seemingly dubbed itself an insurance expert, yet cites no authority to support its conclusion.

Normally, I would refrain from speculating; however, since the majority has opened the door, I will follow. If Ronald and Brandi had contracted for one million dollars in UIM coverage, their respective premiums would have only increased nominally. Additionally, if the majority expects this case to have precedential value, thereby rendering anti-stacking clauses unenforceable in Idaho, insurers will begin charging significantly higher premiums. That is not speculation, as it stands to reason that an insurer cannot increase risk without increasing premiums.

10

In sum, to accomplish its goal of awarding Trent more insurance coverage, the majority fabricated an ambiguity and supported its finding with irrelevant claims and speculation. In doing so, the majority disregarded the principal issue presented by this case, which I will now address.

The principal issue in this case is whether the district court properly interpreted the UIM Other Insurance Subsection in each of the Enumclaw Policies. The district court held that the UIM excess clause contained within the Other Insurance Subsection in each of the policies created a conflict; therefore, the district court disregarded the entire Other Insurance Subsection despite the fact that the remaining clauses, namely the anti-stacking clause, did not create any conflict themselves. The insurance policy sets forth three separate provisions in one paragraph under the heading "OTHER INSURANCE." They are a "proration" provision ("If there is other applicable similar insurance we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits."); an "anti-stacking" provision ("If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy."); and an "excess insurance" provision ("However, insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."). To make it harder for justices to avoid the obvious, the insurer should separately title each provision.

At the outset, it is important to clarify that this Court's holding in *Sloviaczek*, disallowing conflicting "other insurance" clauses, was misinterpreted and extended too far by the district court in this case. 98 Idaho 371, 565 P.2d 564. *Sloviaczek* stands for the simple proposition that where "other insurance" clauses conflict, they must be disregarded. *Id.* at 375, 565 P.2d at 568. *Sloviaczek* has no effect on "other insurance" clauses that are not in conflict, a fact which *Erland* and *Hansen v. State Farm Mutual Automobile Insurance Co.* clearly illustrate. *See Erland*, 136 Idaho 131, 30 P.3d 286; *Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 735 P.2d 974 (1987). In *Erland* and *Hansen*, this Court enforced UIM anti-stacking clauses, holding in each instance that the clause at issue was not in conflict with other provisions in the relevant policies, and, further, that anti-stacking clauses generally are not against public policy. *Erland*, 136 Idaho at 134, 30 P.3d at 289; *Hansen*, 112 Idaho at 666, 735 P.2d at 977. Thus, the enforcement of anti-stacking clauses in *Erland* and *Hansen* did not disturb the holding of *Sloviaczek*. Similarly, here,

11

the UIM anti-stacking clause is separate and unaffected by the conflicting UIM excess clause. Therefore, in accordance with *Sloviaczek*, the UIM excess clause should be disregarded, but the anti-stacking clause should be enforced.

In *Erland*, this Court upheld a clause nearly identical to the UIM anti-stacking clause in the case at hand. 136 Idaho at 132, 30 P.3d at 287. This Court was presented with the following factual circumstances: (1) plaintiff was a passenger in a car accident; (2) the driver had an auto-insurance policy that covered up to $100,000 in damages; (3) plaintiff had auto-insurance that provided $50,000 in underinsured motorist coverage; (4) plaintiff was paid $100,000 from the driver's auto-insurance; and (5) plaintiff attempted to collect the $50,000 under her own insurance. *Id.* Defendant, the insurer, claimed it was protected from paying plaintiff by the following anti-stacking clause in the other insurance subsection of her policy:

> OTHER INSURANCE
>
> If there is other insurance:
>
> 1. For bodily injury suffered by an insured while occupying a motor vehicle you do not own, we will pay the insured loss not covered by other insurance. However, this insurance will apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of the other insurance.
>
> 2. Except as stated above, if there is other insurance similar to this coverage under any other policy, we will be liable for only our share of the loss. Our share is our proportion of the total insurance limits for the loss.
>
> **3. In any event, if more than one policy applies, total limits applicable will be considered not to exceed the highest limits amount of any one of them.**

*Id.* at 133-34, 30 P.3d at 288-89. (Emphasis added). In its decision, this Court reasoned that:

> [T]he Court has repeatedly stated that it is the function of the Court "to construe a contract of insurance as it is written, and the Court by construction cannot create liability not assumed by the insurer, nor make a new contract for the parties, or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability." *Kromrei v. AID Ins. Co.,* 110 Idaho 549, 551-552, 716 P.2d 1321, 1323-1324 (1986), citing *Unigard Ins. Group v. Royal Globe, Etc.*, 100 Idaho 123, 128, 594 P.2d 633 (1979) (quoting *Miller v. World Ins. Co.*, 76 Idaho 355, 357, 283 P.2d 581, 582 (1955)).

*Id.* at 133, 30 P.3d at 288. This Court held that the UIM anti-stacking clause in the plaintiff's policy was clear, and did not conflict in any way with the provisions of the driver's insurance policy. *Id.* at 134, 30 P.3d at 289. Accordingly, the UIM anti-stacking clause was enforced. *Id.* To reach its conclusion, this Court expressly applied the reasoning from *Sloviaczek*.

> As the court did in *Sloviaczek*, a court must compare the clauses of the applicable policies to determine if the clauses conflict. If clauses conflict they are void and the coverage of both policies can be stacked, allowing the insured to collect under both policies. However, if the clauses do not conflict, they are enforced.

*Id.* (internal citations omitted). In sum, *Erland* stands for the proposition that the rejection of conflicting **UIM excess clauses** in *Sloviaczek* has no effect on the enforcement of non-conflicting **UIM anti-stacking clauses**. Here, as in *Erland*, the non-conflicting UIM anti-stacking clause should have been enforced. Such enforcement would be in accordance with this Court's holdings in *Sloviaczek* and *Erland*.

*Hansen* provides another instance in which this Court has approved of UIM anti-stacking clauses. 112 Idaho 663, 735 P.2d 974. In *Hansen*, the plaintiff held three separate insurance policies with State Farm; one for each of his cars. *Id.* at 664, 735 P.2d at 975. Each of these policies provided for UIM coverage. *Id.* Each also contained UIM anti-stacking clauses providing that where the car driven by the plaintiff was covered by any one of the policies, the UIM coverage in the other policies could not also be applied. *Id.* at 666, 735 P.2d at 977. This Court held that the UIM anti-stacking clauses were clear, applicable, and not against public policy. *Id.* at 668, 735 P.2d at 979.

In *Sloviaczek*, this Court adopted the Lamb-Weston doctrine, established by the Oregon Supreme Court. 98 Idaho at 374, 565 P.2d at 567 (adopting the doctrine established in *Lamb-Weston, Inc. v. Oregon Automobile Insurance Co.*, 219 Or. 110, 341 P.2d 110 (1959)). The Lamb-Weston doctrine provides that "[w]hen 'other insurance' clauses conflict, they must be disregarded." *Id.* at 375, 565 P.2d at 568. In *Lamb-Weston*, the Oregon Supreme Court was presented with two insurance policies, one that contained a UIM excess clause and one that contained a UIM pro-rata clause. 219 Or. at 113-1, 341 P.2d at 112. The Oregon Supreme Court held that the UIM excess and pro-rata clauses created a conflict. The conflict was rooted in the fact that there was no division of liability that could satisfy each clause at the same time; thus, there would be no coverage provided by either policy. *Id.* at 129, 341 P.2d at 119. Therefore, the Oregon Supreme Court held that those two clauses were disregarded due to the conflicting language. *Id.* Three observations from this Court's adoption of the Lamb-Weston doctrine are of critical importance: (1) this Court in *Sloviaczek* and the Oregon Supreme Court in *Lamb-Weston* only invalidated the conflicting language; (2) nowhere in *Lamb-Weston* did the Oregon Supreme Court address whether separate, albeit related, clauses in the policies, which themselves did not

conflict, must also be disregarded; and (3) *Lamb-Weston* did not invalidate a UIM anti-stacking clause. *Id.* These observations are key to understanding that *Sloviaczek* and *Lamb-Weston* only require this Court to invalidate UIM "other insurance" clauses that actually conflict, and, conversely, do not require the invalidation of independent, non-conflicting UIM "other insurance" clauses.

In granting summary judgment for the Respondent, the district court relied on its own misinterpretation of *Sloviaczek* to come to the conclusion that the entire UIM Other Insurance Subsection should be disregarded. In *Sloviaczek*, this Court invalidated the following language in two uninsured motorist provisions:

> Other Insurance: with respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under uninsured motorists shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

*Id.* at 372, 565 P.2d at 565. It is crucial to highlight the fact that in *Sloviaczek*, the relevant UIM "other insurance" subsection consisted of only one sentence, an **excess clause**, which created the conflict. Notably, the policy in *Sloviaczek* did not contain a separate UIM anti-stacking clause. Because there was no UIM anti-stacking clause from the outset, there was no UIM anti-stacking clause to enforce after the conflict was resolved. *Id.* at 375, 565 P.2d at 568. In the case at hand, the Other Insurance Subsections consists of three distinct clauses, of which, only one conflicts. Therefore, the two remaining clauses, including the UIM anti-stacking clause, should be enforced.

Respondent argues that because the UIM excess clause is part of the UIM Other Insurance Subsection, the entire subsection must be disregarded in its entirety, including the UIM anti-stacking clause. Such an approach would be using a hatchet where a scalpel is needed. It is clear that the Lamb-Weston doctrine, adopted by this Court in *Sloviaczek*, does not support Respondent's argument. The Lamb-Weston doctrine and *Sloviaczek* stand for the removal of conflicting language, leaving the remaining UIM "other insurance" language not in conflict to be enforced. *Sloviaczek*, 98 Idaho at 375, 565 P.2d at 568.

It is important to distinguish *Sloviaczek* from *Erland*, *Hansen*, and the present case. On one hand, we have *Sloviaczek,* in which the relevant part of the "other insurance" subsection

14

consisted of only one sentence which contained a conflicting UIM **excess clause**. *Id.* at 372, 565 P.2d at 565. In other words, *Sloviaczek* dealt entirely with UIM **excess clauses** in the "other insurance" subsection. *Id.* at 375, 565 P.2d at 568. Each clause stated that it was excess over the other clause thereby clearly creating a conflict. *Id.* Having dismissed the conflicting UIM **excess clause**, this Court reasoned that there were no restrictions on the policies that would act to prevent stacking. Accordingly, the policies were stacked. *Id.* On the other hand, we have *Erland*, *Hansen*, and the present case which all include UIM **anti-stacking clauses**. *Erland*, 136 Idaho at 132, 30 P.3d at 287; *Hansen*, 112 Idaho at 666, 735 P.2d at 977. The fact that this Court, in *Sloviaczek*, disregarded the UIM **excess clause** had no effect on the enforcement of the UIM **anti-stacking** clauses in *Erland* and *Hansen*. Similarly, *Solviaczek* should have no effect on the enforcement of the UIM **anti-stacking clause** in this case. The key distinction between *Sloviaczek* on one hand and *Erland*, *Hansen*, and the present case on the other hand is that *Sloviaczek* addressed only an **excess clause** while the others address **anti-stacking clauses**. All of the cases co-exist peacefully.

As previously stated herein, the Other Insurance Subsection at issue in this case consists of three separate clauses, of which only the excess clause conflicts. The UIM anti-stacking clause provides that "[i]f this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy." The plain meaning of this language serves to limit the maximum benefits available where multiple policies exist. It does not create conflict between policies under a Lamb-Weston analysis, because both policies would adopt the same limit.

Accordingly, dismissing the UIM excess clause resolves the conflict. There is no need to dismiss the UIM anti-stacking clause as well. The conflict created by the UIM excess clause does not require hatchetting the entire Other Insurance Subsection; rather, in keeping with the intentions of the contracting parties, this Court should only use a scalpel to remove the conflicting language, leaving the remaining clauses as enforceable. This Court has no justification for invalidating an entire subsection, where invalidating one clause of that subsection will resolve the conflict.

*Sloviaczek* is entirely consistent with the present case because, in both cases, the conflicting UIM excess clauses will be disregarded. However, here, unlike *Sloviaczek*, the conflicting UIM anti-stacking clause is separate from the conflicting UIM excess clause;

15

therefore, the UIM anti-stacking clause in the present case should not be dismissed, but should remain and be enforced.

In sum, "[i]t is the function of the Court to construe a contract of insurance as it is written .and the Court by construction cannot create a liability not assumed by the insurer, nor make a new contract for the parties, or one different from that plainly intended . . . ." *Miller v. World Ins. Co.*, 76 Idaho 355, 357, 283 P.2d 581, 582 (1955). While the injuries suffered by Trent are heartbreaking, they should not impact this Court's interpretation of the Enumclaw policies. The anti-stacking clause in the Enumclaw policies is clear and unambiguous; therefore, it should be enforced by this Court.

Justice EISMANN CONCURS.